[No. D024685. Fourth Dist., Div. One. Apr. 29, 1996.]

MIKE MOORE'S 24-HOUR TOWING et al., Plaintiffs and Respondents,
v.
CITY OF SAN DIEGO et al., Defendants and Appellants;
SAN DIEGO POLICE TOW OPERATORS, Real Party in Interest and
Appellant.

## COUNSEL

John W. Witt, City Attorney, C. Alan Sumption and Eugene P. Gordon, Chief Deputy City Attorneys, and James M. Chapin, Deputy City Attorney, for Defendants and Appellants.

Hecht, Solberg, Robinson & Goldberg, Thomas C. Nelson, Richard A. Schulman and David R. B. Little for Real Party in Interest and Appellant.

Robert P. Otillie for Plaintiffs and Respondents.

___

**OPINION**

**HUFFMAN, Acting P. J.**—The City of San Diego (the City) awarded five-year contracts for vehicle towing in nine separate districts. The losing bidders in three of these districts, Mike Moore's 24-Hour Towing (Moore), Tom Moynahan, and H. M. Sevel, Inc. (sometimes collectively the Moore group), filed protests with the San Diego City Council (City Council), which heard them at a council meeting. (San Diego Mun. Code (SDMC), § 22.0513.) The Moore group protested that the bids of the prevailing bidder in those three districts, San Diego Police Tow Operators, Inc. (SDPTO), should have been disqualified for ten specified omissions in its bid. Moore also contended that its own bid should not have been disqualified as incomplete. The City rejected the protests and the Moore group filed this petition for writ of mandate. (Code Civ. Proc.,[1] § 1085.) The trial court rejected Moore's claim that its bid should have been found complete, but accepted the argument of the Moore group that a fair hearing had not been held before the City Council because the evidence presented at the hearing included a misrepresentation by City staff that there were no material omissions in the SDPTO bid. The trial court remanded the matter to the City Council to reconsider the bids submitted in the three districts, with directions to consider a particular document presented at the protest hearing supporting the Moore group's allegations of material omissions by SDPTO.

The City, joined by SDPTO, appeals from the order, contending that the trial court erred in finding the City's approval of the SDPTO bid was irrational, arbitrary, or capricious. The Moore group has cross-appealed the order, contending the trial court erroneously rejected its arguments that its bid was adequate. We reverse the portion of the order requiring remand to the City Council for reconsideration, finding that application of the proper standard of review does not permit such a resolution of the matter. We affirm the balance of the order after hearing, which is construed as an appealable judgment. (§ 1064.)

### FACTUAL AND PROCEDURAL BACKGROUND

The City contracts with private companies to have vehicles towed from public streets and other places for reasons ranging from illegal parking to

___

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

accident cleanup. (Veh. Code, § 22651.) In February 1988, the City awarded to SDPTO a five-year citywide franchise contract to tow such vehicles. SDPTO is a California corporation which conducts business through its member companies, five individual towing businesses. The SDPTO contract expired in 1993, but was extended through 1994. The City started the process for awarding a new contract in 1993, and then issued a second request for proposals (RFP) in 1994. This RFP sought bids on both a possible citywide contract and separate contracts for each of the nine City districts. The RFP contained certain criteria which a bidder had to meet, and provided that if the bid were deemed responsive to the requirements of the RFP, it would be evaluated on the basis of the referral fee that the towing company offered to pay the City for each City-requested tow.

The proposals received were evaluated by a screening committee, which made a recommendation to the City Council. This action concerns only three of the nine City districts, as no citywide contract was awarded. SDPTO bid on each of those districts, and Moore bid on district 3, offering a higher referral fee than did SDPTO. Moynahan and Sevel submitted bids for districts 8 and 9, offering referral fees which were lower than those offered by SDPTO. The city manager's recommendations were based on the evaluation committee's findings, and found Moore's bid was nonresponsive to the RFP, and that for district 3, SDPTO should be awarded the contract. SDPTO also received the contracts for districts 8 and 9, although the Moynahan and Sevel bids were found responsive, because SDPTO offered the City a higher referral fee.

The Moore group filed formal protests as allowed by the RFP's, each arguing that the SDPTO bid was inadequate because it contained nine or ten material omissions of information required by the RFP. In addition, Moore individually protested that it was unfair to find his bid was nonresponsive for failure to provide a biographical summary for the key personnel in his management team, and a list of his current business accounts, since that information had been inadvertently omitted and was available in earlier versions of his bids.[2] Moore argued that if his bid were going to be disqualified for such omissions, the SDPTO bid should likewise be disqualified.

At the hearing on the protests, City Council member Judy McCarty inquired of City staff about the reasons for disqualifying Moore's bid while

---

[2]Moore had submitted a related bid in 1993, including background on his key management personnel and a listing of his accounts in 1993. Moore also participated with other contractors in submitting a citywide bid under the name San Diego Approved City Towers (SDACT) in 1994, which included biographical information about Moore.

accepting SDPTO's bid. A speaker for the city manager, Deputy Police Chief Dave Worden, responded to the effect that the Moore bid omitted certain required information, while the SDPTO bid had initially been found responsive and had recently been reexamined and found to include all required information. Worden stated that Moore's representative, Attorney Robert Ottilie, was incorrect in maintaining that there were material omissions in the SDPTO bid. After a vote, the protests were denied on August 8, 1994.

The Moore group then sought reconsideration of the denial of their protest, and submitted papers entitled "Documentation Supporting Allegations of Material Omission by SDPTO" to the City Council. The City did not act upon the request for reconsideration.

The Moore group filed this petition for writ of mandate to require the City to find that the Moore bid was responsive, and the SDPTO bids were not.[3] At the hearing on the petition, the Moore group submitted as an exhibit their "Documentation Supporting Allegations of Material Omission by SDPTO" (referred to here as exhibit 20), which had been submitted to the City in the reconsideration request. The trial court issued a tentative ruling denying the petition in all respects, and heard argument. The City's contention was that the SDPTO bid was exemplary, and no additional response should be required concerning business records, business hours, fees, etc. (i.e., as covered in section 3 of the RFP, the "Statement of Work"), or as to other matters such as insurance and credit rating. The court then took the matter under submission and issued an order after hearing, first denying the petition to the extent it requested that Moore's bid be deemed qualified or responsive. The court stated, "There is no evidence that the City Council acted arbitrarily or capriciously in rejecting Moore's bid. Moore's bid did not contain material information which was needed by the Evaluation Committee to determine that Moore was capable of performing under the contract. The Committee and the City Council were not required to search Moore's other bids, submitted in a different context, in order to locate the missing material."

As to the SDPTO bid, the trial court granted the petition on the basis that the City Council had abused its discretion when it dismissed without inquiry

---

[3]In a related action not before this court, SDPTO sued the City, Moore, and the towing companies that received the other six district contracts, making claims of collusion and violations of various laws. That action is still pending. (SDPTO v. City (Super. Ct. San Diego County, 1995, No. 681578).) The City brought a petition for writ of mandate and request for stay in both the related action and in this action, which were denied by order of December 1, 1995. (No. D024611.) However, it was ordered that this appeal be expedited. (Order of Dec. 1, 1995.)

the Moore group's protest concerning the sufficiency of the SDPTO bid. The court stated, "The record is clear that the Council was precluded from making a determination as to the materiality of any omissions in the SDPTO bid by a misrepresentation made by the Deputy Chief of Police found at page 12 of the transcript of the August 8, 1994 meeting of the City Council." As a remedy, the court ordered that the matter be remanded to the City Council for a reconsideration of the bids submitted in districts 3, 8 and 9, and the City Council was directed to consider exhibit 20, "Documentation Supporting Allegations of Material Omission by SDPTO," and make an independent determination as to whether those omissions, now said to be conceded by both the City and the Moore group, constitute a material variance from the requirements of the RFP.[4]

Posttrial proceedings ensued, including the City's motions for reconsideration and for new trial which were set for oral argument October 12, 1995. The time to rule on the motion for new trial had expired before the hearing, and the record does not show any ruling on the new trial or reconsideration motions. The motion for new trial was deemed denied. (§ 660.) The order after hearing constitutes a final order disposing of the entire matter and may be construed by this court as the judgment issuing the writ. (§ 1064.) The City, allied with SDPTO, appealed, and the Moore group cross-appealed.

## Discussion

On appeal, the Moore group does not challenge the standard of review utilized by the trial court, which was general mandamus under § 1085, for review of legislative action by the City in awarding the contracts and denying the protests. We therefore set forth the standard of review for legislative action, with attention to the Moore group's argument that, even applying this standard of review, procedural unfairness occurred due to the nature of the evidence before the City Council, such that the trial court was correct in remanding the matter for further action and further evidentiary hearing. Once we have resolved the standard of review issues, we may turn to a review of the record to determine whether the City had a reasonable basis for the actions taken, both as to the SDPTO bid and the Moore bid.

---

[4]On appeal, the City and SDPTO do not concede there were any material omissions in the bid, instead contending "SDPTO's proposals responded to all *required* parts of the RFP." (Italics added.) The difficulty lies in determining what parts of the RFP "required" responses. (See pt. II.A., *post.*)

# I

## *Standard of Review*

### A

### *General Principles*

■ A public entity's "award of a contract, and all of the acts leading up to the award, are legislative in character." (*Santa Ana Tustin Community Hospital* v. *Board of Supervisors* (1982) 127 Cal.App.3d 644, 652 [179 Cal.Rptr. 620].) "[T]he letting of contracts by a governmental entity necessarily requires an exercise of discretion guided by considerations of the public welfare." (*Joint Council of Interns & Residents* v. *Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1211 [258 Cal.Rptr. 762] (*Joint Council*).) "[T]he mere fact that a proceeding before a deliberative body may possess certain characteristics of the judicial process does not convert legislative action into an adjudication of a private controversy. [Citations.]" (*Id.* at pp. 1211-1212.) Thus, both the award of the contracts and the decision to reject the protest should be considered legislative actions.[5]

■ Review of a local entity's legislative determination is through ordinary mandamus under section 1085. "Such review is limited to an inquiry into whether the action was arbitrary, capricious or entirely lacking in evidentiary support. [Citation.]" (*Corona-Norco Unified School Dist.* v. *City of Corona* (1993) 17 Cal.App.4th 985, 992 [21 Cal.Rptr.2d 803] (*Corona-Norco*).) This test has also been formulated to add an inquiry whether the agency's decision was "contrary to established public policy or unlawful or procedurally unfair." (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892].) However the test is formulated, ". . . the ultimate questions, whether the agency's decision was arbitrary, capricious or entirely lacking in evidentiary support, contrary to established public policy or unlawful or procedurally unfair, are essentially questions of law. With respect to these questions the trial and appellate courts perform essentially the same function, and the conclusions of the trial court are not conclusive on appeal. [Citations.]" (*Ibid.*) The only exception is where there are foundational matters of fact as to which the trial court's findings could be conclusive on appeal, where supported by substantial evidence. (*Ibid.*)

---

[5]Although the Moore group initially argued at trial that the matter should be considered to fall under administrative mandamus (§ 1094.5) as an adjudicative act, they have not pursued that claim on appeal.

B

*Scope of Review*

Before outlining in more detail the process this court should follow in reviewing this record, we first focus upon which decisions are under review. The appeal and cross-appeal are from the trial court's decision finding the Moore bid inadequate and granting the petition to remand for consideration of allegedly omitted material as to the SDPTO bid. The underlying City Council legislative decision was to find the SDPTO bid adequate and reject the protests, and to find the Moore bid inadequate. ██ The City argues de novo review on appeal is necessary of the underlying legislative City decision, with no deference paid to the trial court's decision. The Moore group argues that this court should defer to a foundational factual finding by the trial court that there was a misrepresentation by City staff to the effect that there were no significant omissions in the SDPTO bid. To choose between these two positions, we must outline the nature of legislative decisionmaking to determine if the trial court was correct that it had the power to find evidentiary error by the City Council and to prescribe a remedy to correct such error.

██ In general, due to separation of powers considerations, "[t]he judiciary confines evaluation of a statute to the terms of the legislation itself and will eschew inquiry into what motivated or influenced those who voted on the legislation. [Citation.]" (*Board of Supervisors* v. *Superior Court* (1995) 32 Cal.App.4th 1616, 1623 [38 Cal.Rptr.2d 876] (*Board of Supervisors*).) It is not possible to establish an objective standard for a party to prove or for a court to review whether legislators followed a certain thought process or acted according to certain motives. (*Id.* at p. 1626.) This judicial reluctance to inquire into legislative thought processes has led to a refusal to inquire into whether legislators did or did not consider certain documents, and when they formed their opinion. (*Board of Administration* v. *Superior Court* (1975) 50 Cal.App.3d 314, 320 [123 Cal.Rptr. 530].) In *Governing Board* v. *Superior Court* (1985) 167 Cal.App.3d 1158, 1161 [213 Cal.Rptr. 771], the Court of Appeal issued a writ of mandate directing the trial court to vacate an order compelling answers at deposition from a member of a school board concerning whether she had read a particular transcript before she voted on an administrative appeal. The Court of Appeal rejected an argument that the questioner was not seeking to probe the mental processes of the board member, but rather was seeking to determine whether certain procedural requirements had been met (i.e., examining the record sufficiently to achieve a substantial understanding of it). (*Id.* at pp. 1161-1162.) The approach in

these cases, declining to inquire into legislative thought processes or motives, is consistent with the limited scope of review in ordinary mandamus proceedings of legislative decisions. In general, the court does not weigh the evidence adduced before the agency or substitute its judgment for that of the agency. (*Shapell Industries, Inc.* v. *Governing Board* (1991) 1 Cal.App.4th 218, 230 [1 Cal.Rptr.2d 818] (*Shapell Industries, Inc.*).) The court will not concern itself with the wisdom underlying the agency's action. (*Ibid.*)

Here, the trial court was concerned that the statement by the City's deputy police chief, Dave Worden, to the effect that he had not found any omissions in the SDPTO bid, was a misrepresentation to the City Council of the true state of that bid. However, in legislative mandamus proceedings, the decision of the legislative body is to be evaluated on its face, without an inquiry into the underlying motive or thought processes of the legislators. (*Board of Supervisors*, *supra*, 32 Cal.App.3d at p. 1623.) In order to make a factual finding that a misrepresentation had occurred, the trial court had to go beyond the face of the award of the towing contracts in order to examine the decisionmaking process which led up to it. We believe this was an unwarranted intrusion into the legislative process, and was an incorrect characterization of the proceedings before the City Council. The City Council was not sitting as a quasi-judicial body, nor was it taking evidence and rendering an individualized decision upon a particular case, such that a finding of evidentiary error would have been appropriate. Rather, it is consistent with the rules of legislative mandate for this court to review the record and the legislative decision de novo, and the trial court's findings are not conclusive upon the appellate court. (*Shapell Industries, Inc.*, *supra*, 1 Cal.App.4th at p. 233.) In summary, "[o]nce exercised, legislative discretion is, absent special circumstances, not subject to judicial control and supervision. [Citation.] 'Any decision made in the exercise of that [legislative] authority would involve the use of discretion. As a consequence, the steps to be undertaken, the method selected, and the decision reached in the course thereof, in the absence of fraudulent or arbitrary action, would not be interfered with by the courts.' [Citation.]" (*Joint Council*, *supra*, 210 Cal.App.3d at pp. 1213-1214.)

## C

### *Issues on Appeal*

With these principles in mind, we return to describing the basic task this court undertakes in reviewing an appeal in a legislative mandamus action. The court's function is to determine whether the exercise of legislative power has exceeded constitutional limitations. The inquiry is whether

the record shows a reasonable basis for the action of the legislative body, and if the reasonableness of the decision is fairly debatable, the legislative determination will not be disturbed. (*Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 462 [202 P.2d 38, 7 A.L.R.2d 990].) The appellate court will look beyond the findings and conclusions of the trial court, where the record shows that the question is debatable and there may be a difference of opinion on the subject. (*Ibid.*) In essence, the question is whether substantial evidence supports the agency's decision (*Joint Council, supra,* 210 Cal.App.3d at p. 1214), although it has also been stated that "what constitutes reasonable evidentiary support may vary depending upon the nature of the action." (*Shapell Industries, Inc., supra,* 1 Cal.App.4th at p. 232.) In a challenge to a legislative decision, the petitioner has the burden of proof to show that the decision is unreasonable or invalid as a matter of law. (*Corona-Norco, supra,* 17 Cal.App.4th at p. 993.) " 'There is also a presumption that the board ascertained the existence of necessary facts to support its action, and that the "necessary facts" are those required by the applicable standards which guided the board. [Citations.]' [Citation.]" (*Ibid.*)

Where a legislative decision is under review, the courts "will tend to defer to the presumed expertise of the agency acting within its scope of authority." (*Shapell Industries, Inc., supra,* 1 Cal.App.4th at p. 232.) Thus, the agency is required to consider all relevant factors, and on appeal a rational connection must be demonstrated between those factors, the choice made, and the purposes of the statute under which the agency was acting. (*Ibid.*)[6]

With these standards in mind, we turn to the record to determine if the City Council had a reasonable basis (1) to find the SDPTO bid adequate under the RFP and (2) to find the Moore bid inadequate as a response to that document.

II

*Sufficiency of the Bids*

Under SDMC section 22.0512, subdivision (a), contracts for procurement under a request for proposals "will be awarded on the basis of the proposal

---

[6]In general, the trial court may not require consideration of material prepared after the agency has taken the action which is under review. (*Shapell Industries, Inc., supra,* 1 Cal.App.4th at p. 233.) Here, the trial court remanded the matter for the City Council to reconsider the matter in light of exhibit 20, prepared after its initial action. Even though much of the same material appears in exhibit 20 as was previously presented to the Board, it was error to require such reconsideration in that light. However, such error was harmless in light of the nature of the de novo review of the record we are undertaking. (*Id.* at pp. 233-234; *Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559, 574-576 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

best meeting City requirements," including the best economic advantage for the City. That section further provides that the purchasing agent and the city manager may waive defects and technicalities when to do so is in the best interest of the City. Similar provisions are incorporated into the City's "General Provisions," a document provided to bidders, reserving the City's right to select the most advantageous bid, and the City's right to waive informalities and technical defects in bids in order to select the most advantageous bid. Such provisions are the applicable standards guiding the City Council in making its decision in the bidding process. (*Corona-Norco, supra,* 17 Cal.App.4th at p. 993.)

On appeal, the inquiry is whether the legislative body adequately considered all relevant factors and demonstrated a rational connection between those factors, the choice made, and the purposes of the statute or regulations under which it was acting. (*Shapell Industries, Inc., supra,* 1 Cal.App.4th at p. 232.) It is presumed that the board ascertained the existence of the necessary facts to support its action, i.e., such facts as are required by the applicable standards which guided the board. (*Corona-Norco, supra,* 17 Cal.App.4th at p. 993.) This court does not conduct a de novo examination of the bids themselves, but rather of the City Council's action on those bids.

A

*SDPTO Bid*

The parties disagree on the interpretation of the RFP provisions as to the amount of information required to be supplied by bidders. The position of the City and SDPTO is that under section 7.1.1 of the RFP, proposals must meet the minimum requirements listed in the RFP sections 4 (information requirements), 5 (proposal format), and 6 (minimum administrative requirements), and this was done here.

The Moore group relies chiefly upon RFP section 2.8, "Selection of Contractor," which provides that the bids will be evaluated "based upon a line item comparison with the [RFP] requirements. Simply stating compliance with a requirement or the absence of a complete descriptive statement by the Offerer *relevant to any action or service item of the [RFP's]* will be construed as a negative response to that item and will have a negative impact upon the evaluation of the proposal." (Italics added.) The Moore group has two major arguments: First, this provision should be broadly interpreted to require detailed responses to all portions of the RFP, not just sections 4, 5, and 6, as section 7.1.1 might suggest. Thus, although SDPTO claims it was enough under the RFP, section 3, to agree to comply with the requirements

of the RFP as to those items appearing in section 3 ("Statement of Work"), Moore would find such a statement to constitute a negative response under section 2.8 of the RFP, because there was no line item response to each item in section 3. Moore thus construes the term, "action or service item" appearing in RFP section 2.8 as including all of the omissions outlined in the protests to the award to SDPTO of the contract. Second, Moore argues that since there are various mandatory provisions in the RFP (e.g., section 5.2.3, requiring a narrative description of the technical approach proposed to accomplish the work under the proposal), specific responses are required to all of the substantive terms of the RFP, not just sections 4, 5, and 6, as mentioned in section 7.1.1. Thus, since section 5.2.3 refers to section 3, a similarly detailed response must be required to section 3.

To analyze these arguments, we set forth the four categories of omissions which the Moore group contends on appeal should have resulted in the SDPTO bid being found nonresponsive.[7]

## 1. *RFP Section 7.4, Bidding Documents*

Section 7.4 of the RFP provides that by submitting the bid, each bidder "hereby proposes to furnish to the City" the services involved at the stated prices. This section states that the bidder "further warrants" that the bid is not made in the interest of or on behalf of undisclosed persons or entities. Pursuant to RFP section 2.6, the SDPTO bids included a statement acknowledging its acceptance of all the terms and conditions of the request for proposal. SDPTO also signed required acceptance certificates agreeing to the provisions of this section.

Moore contends that a more specific, verbatim response to this section was required. The City responds, first, that RFP section 7.4 does not constitute an "action or service item" (RFP § 2.8) such that a more detailed response was required; second, that the required warranties are implied by the submission of a bid and the acceptance certificates; and third, that section 7.4 is not one of the "minimum requirements listed in sections 4, 5, and 6" of the RFP, as stated in section 7.1.1, such that any further detail was

---

[7]The Moore group apparently is only pursuing arguments on appeal that eight of the cited ten omissions are material, as it has not presented any arguments here concerning RFP section 2.16, requiring disclosure of any felonies and financial interest in the subject of the contract, or RFP section 6.1, the cover letter requirement identifying offices, storage yards, qualifications to do business, and a corporate officer. We need not address these sections further. It should be noted that the Moore group submitted copies of both the 1993 and 1994 versions of SDPTO's bids; it is the 1994 bid with which we are concerned. In this portion of the opinion, all "section" references are to the RFP.

required. The City also cites its general power to waive any defects in bids in the best interests of the City. (SDMC, § 22.0512, subd. (a).) We agree with the City's position and conclude the City rationally construed the requirements of the RFP to find them satisfied here. There is no defect in the bid in this respect.

## 2. RFP Section 2.14, Insurance

RFP section 2.14 requires a winning bidder to procure and submit copies of certain proofs of insurance "before commencement of work," not before submitting the bid. Proof of insurance is thus a condition of award of a contract, not a part of a bid. When SDPTO accepted the terms and provisions of the RFP, it agreed to comply with this insurance requirement. The bid also includes existing certificates of insurance for each of its subcontractors that would do the work.

The Moore group argues the insurance documentation provided was not sufficient because it pertained to SDPTO's members, not to the separate corporate entity of SDPTO itself.[8] Even assuming this to be true, section 2.14 of the RFP did not require proof of insurance of SDPTO individually at the bidding stage, but rather at the stage of approval of the contract. Moreover, section 2.14 is not an "action or service item" under section 2.8, and thus no further detail was required in the bid. Thus, the Moore group's objection on this ground is not well founded.

## 3. RFP Section 4.1.3, Credit Rating

The RFP requires that the bidder respond to the question of the bidder's credit rating, by providing a "bank or other letter of reference." SDPTO submitted a bank's letter of reference for each of its five member entities, and showed that one of its members had sufficient financial strength to perform without help from the others. SDPTO also submitted a letter showing it had a performance bond in its own name. The Moore group claims that this showing in the bid was inadequate because no credit information for SDPTO, a separate corporate entity, was provided, as distinct from its constituents.

To evaluate the City's approval of the SDPTO bid, we must determine whether there was a rational connection between the factors considered, the choice made, and the purpose of the regulations acted upon. Here, RFP section 4.1.3 required submission of a "bank or other letter of reference"

---

[8]SDPTO has five independent employees separate from the subcontractors.

regarding the bidding firm. Under the circumstances, we believe the City had a rational basis to decide that credit information about SDPTO's constituent members was sufficient for purposes of accepting this bid. Enough information was provided about SDPTO and its constituents to enable the City to conclude that SDPTO was strong enough financially to perform the contract bid upon. The City had knowledge that SDPTO was already providing towing services in a highly satisfactory manner. It could thus reasonably conclude that this information was sufficient to justify finding the proposal responsive on this point.

### 4. RFP Section 3, Statement of Work

Section 5.2.3 of the RFP requires the proposal format to include a narrative description of the technical approach to be used to accomplish the "Statement of Work" under the proposed contract. The RFP section 3 describes and sets criteria for such aspects of the towing business as business hours, employees, storage yards, trucks, etc., and is thus designed to describe the work to be bid upon. In its response to section 3, SDPTO described its methodology for performing the proposed contract and explained the operations involved in a typical tow call from start to finish. The SDPTO bid continues, "We have also included an Administration section and a Special Features section in order to address items that do not fall within the parameters of the 'typical' tow call (e.g. compliance requirements, fee payments, etc.). [¶] .Our approach is designed to meet or exceed all of the specifications and requirements of the Request for Proposal. We hereby acknowledge and accept all terms and conditions of the RFP, . . . including all requirements contained in the [City's] General Provisions." Thus, SDPTO agreed to comply with the requirements of the RFP, including these sections.

The Moore group's argument is that the various requirements in the RFP section 3 "Statement of Work" have not been adequately described in the SDPTO bid, because there is no narrative description of the technical approach as to these particular subjects. Specifically, the bid is said to be inadequate as to sections 3.6 (response time), 3.7 (business records), 3.10 (negligent impound payment), 3.13.1 (tow dispatch center or system payments and fees), and 3.16 (compliance requirements).[9] While it is true that the format requirements of section 5 must be met in order for the bid to pass the minimum qualifications standard of section 7.1.1, that minimum requirement rule still does not specifically incorporate all the items listed in section

---

[9] RFP section 3.13.1 refers to a computer interface fee the City required to help run a dispatch center. Section 3.16 refers to an agreement to report tow information within 24 hours.

3 of the RFP. This is so because section 7.1.1 only mentions sections 4, 5, and 6 of the RFP as the minimum requirements (dealing with information, proposal format, and administration) which must be met for further consideration of the bid.

In any case, the City could reasonably have concluded that SDPTO provided sufficient information on the RFP section 3 provisions governing the above described topics. A "narrative description" is not a point-by-point response. The bid includes specific references to and descriptions of the challenged items, including SDPTO's position on response time (§ 3.6), business records (§ 3.7), negligent impound payments (§ 3.10), tow dispatch payments and fees (§ 3.13.1), and compliance reports (§ 3.16). SDPTO agreed to meet the required standards.

■ In conclusion, it is incorrect to characterize Deputy Chief Worden's statements as misrepresentations which are a factual matter not to be reached on appeal. Rather, his statements were only part of the evidence before the Council, and did not prevent it from evaluating all the evidence. On the entire record, we conclude that the City could reasonably have found that the RFP requirements were satisfied by the SDPTO bid, and there were no material omissions interfering with the City's ability to understand and approve that bid.

B

*Sufficiency of the Moore Bid*

The trial court upheld the City Council's determination that the Moore bid was not responsive to the RFP. Examining the record, we find a transcript of the meeting of the evaluation committee, in which the members of the committee discuss the Moore bid, concluding that it was not responsive to the RFP in the areas of references, biographical sketches of key personnel, and business accounts and contracts However, Moore's declaration states that the biographical data was not missing from his own copy when submitted, although the City contends it was missing from its copy. Moore also states that the missing documents were contained in a separate bid submitted for a citywide proposal by SDACT, as well as an earlier Moore proposal, in 1993 and 1994. After the evaluation committee had completed discussion of the Moore bid, the members acknowledged there was background information about Moore in the overall bid by SDACT, but went on to find the SDACT bid nonresponsive.

At the City Council hearing on the protest, Moore's attorney acknowledged that the Moore bid failed to include a few pages about background

information on critical employees, as well as his accounts with the City, and characterized these as inadvertent omissions. At the trial on the petition for writ of mandate, there was some dispute whether Moore had submitted to the court the actual version of his bid that was submitted to the City, or a more complete version. The trial court stated it was not disputed there was missing material at the City Council level.

On appeal, Moore cites to a copy of the Moore bid in the record which does contain the biographical data on key personnel and a listing of accounts and contracts. However, he appears to concede that the City Council was not given information in the operative Moore bid that was submitted (as opposed to earlier, related bids) about management background and experience, and business accounts and phone numbers of references. He thus argues that even if there were a clerical error due to missing pages in the City's copy of the Moore bid, Moore should not have been disqualified since the same material was available in earlier versions of bids submitted by Moore or in which he participated. In his view, his bid was in substantial conformance with the RFP, so that the City erred in rejecting it. (*Downtown Palo Alto Com. for Fair Assessment* v. *City Council* (1986) 180 Cal.App.3d 384, 396 [225 Cal.Rptr. 559].) He reiterates his argument that the SDPTO bid was liberally interpreted, and thus his own should have been likewise interpreted. He argues the City would benefit from such an interpretation in the approximate amount of $550,000, since the Moore bid offered a higher referral fee to the City than did the SDPTO bid. In its reply brief, the City contends that its willingness to forego this extra income "only confirms the inadequacy of Moore's bid."

In examining the act of a coordinate branch of government, the legislative branch, a court will not inquire into the wisdom of laws or regulations. (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d at p. 461.) Rather, our function is to determine whether the record shows a reasonable basis for the action of the City, and where the reasonableness of the decision is fairly debatable, we will not disturb the legislative determination. (*Id.* at p. 462.) The City's "General Provisions," a part of the bid in any contract, reserved the right in the City to reject any item or items in the bids, and to select the bid deemed most advantageous to the City. It is a legislative function to consider data, opinion, and arguments, and then to exercise discretion guided by considerations of the public welfare. (*Joint Council, supra,* 210 Cal.App.3d at pp. 1210-1211.)

In *Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal.App.2d 206, 211-212 [48 Cal.Rptr. 550], the court found no abuse of discretion by a city council in accepting a bid for a cable franchise that did not offer the lowest

rate; the court found that the governing ordinance gave discretion to the council "to accept the bid of the applicant who, in the opinion of the Council, is best qualified to render proper and efficient service to subscribers, regardless of the rate charged." In *Judson Pacific-Murphy Corp.* v. *Durkee* (1956) 144 Cal.App.2d 377, 382 [301 P.2d 97], a challenge to an award of a public contract, the court observed, "Clearly, the call for bids and the law confers on the director [of public works] the duty of exercising his judgment as to whether it is in the best interests of the state to award the contract to the lowest bidder. The lowest qualified bidder has no legal right to compel the acceptance of his bid. [Citations.]"

██ In light of the admittedly incomplete nature of the Moore bid, and the uncertain availability and accuracy of the omitted material in related documents that had previously been submitted, the City Council had a reasonable basis to conclude that the Moore bid was not the most advantageous for the City. It was not compelled to find that the bid was in substantial conformity with the requirements, or to award the contract to Moore, in light of its right to negotiate in any manner necessary to serve the best interest of the City (RFP § 2.7), and in light of its obligation to seek the most advantageous contract for the City. On this record, the City's decision was not "substantively irrational, arbitrary, capricious or wholly lacking in evidentiary support." (*Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d at p. 389.)

## DISPOSITION

The order after hearing is construed as a judgment and is reversed to the extent that it determines the City Council abused its discretion in dismissing the protest concerning the sufficiency of the SDPTO bid, and to the extent that it remands the matter for reconsideration. The trial court is directed to enter a new judgment denying the petition on that basis. The balance of the judgment is affirmed to the extent that it denies the petition to deem the Moore bid qualified. Each party to bear its own costs.

Nares, J., and Haller, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 14, 1996.