Filed 12/11/14  Ontario Mountain Village Assn. v. City of Ontario CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| ONTARIO MOUNTAIN VILLAGE ASSOCIATION et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF ONTARIO,<br><br>        Defendant and Respondent. | E058344<br><br>(Super.Ct.No. CIVRS1200998)<br><br>O P I N I O N |

APPEAL from the Superior Court of San Bernardino County.  Barry L. Plotkin, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Briggs Law Corporation, Cory J. Briggs and Mekaela M. Gladden for Plaintiffs and Appellants.

Best Best & Krieger, Michelle Ouellette, Richard T. Egger, and Sarah E. Owsowitz for Defendant and Respondent.

1

# I.  INTRODUCTION

Plaintiffs and appellants, Ontario Mountain Village Association (OMVA) and Phillip J. Meza,  appeal from the judgment denying their complaint for declaratory and injunctive relief and writ petition to invalidate Ordinance No. 2947, adopted by defendant and respondent, City of Ontario (the City), in December 2011.  The ordinance extended, by one year, the expiration dates of all development plans, conditional use permits, and variance approvals (permits) previously approved by the City and scheduled to expire on or before March 1, 2013.  The City adopted similar extension ordinances in March 2009, January 2010, and March 2011.

Plaintiffs appeal, claiming the City (1) violated section 54957.5 of the Ralph M. Brown Act (Gov. Code § 54509 et seq.)[1] (the Brown Act) in refusing to disclose, until after the December 6, 2011, city council hearing on the ordinance, a legal memorandum the city attorney summarized and distributed to the council members during the hearing; (2) violated their due process right to a fair hearing in refusing to disclose the legal memorandum until after the December 6 hearing; (3) violated the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) in failing to substantiate its determination that the ordinance was exempt from environmental review because it was not a "project" within the meaning of CEQA; and (4) violated various

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

2

provisions of the Ontario Municipal Code (OMC) in approving the ordinance. We find these claims without merit and affirm the judgment.

## II. BACKGROUND

The subject ordinance states its adoption was "necessary to the support of the future economic recovery of the City" because, "with the slow recovery in the economy, developers, and land and business owners face the prospect of having their . . . approvals expire before they can obtain financing or have their projects make any sort of economic sense to build," and the ordinance would spare such persons "the added time and expense" of having "to go through the entitlement process again" and "obtain[] new approvals." The City cited the same reasons in adopting similar extension ordinances in March 2009, January 2010, and March 2011.

A public hearing on the ordinance was duly noticed and placed on the agenda for the 6:00 p.m. November 15, 2011, city council meeting. During the afternoon of November 15, a staff member from the law office of Cory J. Briggs, counsel for plaintiffs, went to the city clerk's office and asked to see all materials constituting the public record of the proceedings for the ordinance. The staff member was told the relevant public records consisted of three items: the November 15 meeting agenda, a two-page agenda report on the proposed extension ordinance, and the proposed extension ordinance itself.

Later during the afternoon of November 15, Briggs faxed a letter to the city council on behalf of Meza, opposing the ordinance on numerous grounds (November 15

3

letter). At the 6:00 p.m. hearing on November 15, the city council acknowledged the City's receipt of Briggs's November 15 letter and voted to continue the hearing to December 6.

On November 16, Briggs, this time acting on behalf of OMVA, faxed a public records request to the city clerk, seeking all public records the City was considering in connection with the ordinance, including all permits to be extended by it (November 16 public records request). The City responded to Briggs's November 16 public records request by e-mail on November 17, and by United States mail on November 22. The City's November 22 letter referred Briggs to City Hall for inspection and copying of some of the records requested, requested clarification of part of the request, and included a three-page listing of all active (unexpired) permits to be extended by the extension ordinance.[2]

On December 2, 2011, the law firm of Best Best & Krieger e-mailed an eight-page legal memorandum, dated December 2, 2011, to two City officials: city manager, Chris Hughes, and director of planning, Jerry Blum (the legal memorandum). The subject line of the e-mail read, "Ontario Wal-Mart Memorandum - Attorney Client Privilege," but the legal memorandum itself does not state it was attorney-client privileged or confidential.

---

[2] Briggs later claimed he never received the November 22 letter or the active permit listing, and did not learn what permits would be extended until after the December 6 hearing on the extension ordinance. On the afternoon of December 6, OMVA filed suit against the City, alleging it had not received the public records it requested in its November 16 public records request. The summons and complaint were served on the city clerk shortly before the December 6 hearing on the extension ordinance. OMVA dismissed the lawsuit in October 2012.

The legal memorandum states it was "from" three attorneys at Best Best and Krieger, including John Brown, a partner at the firm who served as city attorney. Best Best and Krieger had a contract to provide legal services to the City.

The legal memorandum analyzed the objections to the ordinance raised in Briggs's November 15 letter to the City, and concluded the ordinance would not violate the OMC, CEQA, or other applicable law, contrary to the claims raised in the November 15 letter. The agenda for the December 6 regular city council meeting was posted after 2:00 p.m. on Friday, December 2. The legal memorandum was not included in the "agenda materials" for the ordinance, but a staff report and the proposed ordinance itself were available.

At the outset of the December 6 hearing, City Attorney Brown distributed copies of the legal memorandum to all of the city council members. In addressing the council, Brown noted the November 15 hearing on the ordinance was continued because Briggs had submitted a letter objecting to the ordinance on the ground it violated various applicable laws, including the OMC and CEQA. Brown told the council he prepared the legal memorandum for its review and consideration and the memorandum would "of course" be made "available to the public as well." Brown then summarized the contents of the legal memorandum, and explained why he and the other attorneys at Best Best and Krieger concluded the adoption of the ordinance would not violate the OMC, CEQA, or other applicable law.

5

The mayor confirmed that none of the city council members had any questions for City Attorney Brown, and Briggs addressed the city council. Briggs first noted that OMVA had just filed a lawsuit against the City, alleging it violated the Brown Act by failing to produce all public records considered in connection with the ordinance, including a listing of the permits to be affected, pursuant to OMVA's November 16 public records request. Next, Briggs asked the mayor to provide him with a copy of the legal memorandum Brown had just given the council members so he could respond to its contents. The mayor refused Briggs's request to review the legal memorandum, saying: "I am ready to hear your response."

Briggs urged the city council not to adopt the ordinance and complained he had not been given an opportunity to review and respond to the legal memorandum. Briggs said his reasons for objecting to the ordinance were set forth in his November 15 letter, and he also complained that the City had not produced all of the public records he requested in his November 16 public records request, including copies of all active (unexpired) permits extended by the extension ordinance. He advised the council members that unless the hearing was continued again, and the City produced all of the public records OMVA had requested, his clients, OMVA and Meza, would sue to invalidate the ordinance. Other than Briggs, no members of the public commented on the ordinance.

After Briggs addressed the council, the mayor asked City Attorney Brown whether the legal memorandum was a public record or was "still attorney client privilege[d]."

6

Brown responded: "No it is absolutely public record, having been distributed to you and I'll be happy to make it available to Mr. Briggs and the [OMVA]." The hearing was then closed. The city council deliberated on the ordinance, voted unanimously to approve it, and adopted it at its December 20, 2011, regular meeting.

On January 4, 2012, the City filed a notice of exemption with the San Bernardino County Clerk, stating the ordinance was not subject to environmental review under CEQA. Around January 5, the City received a letter from Briggs on behalf of OMVA and Meza, alleging the legal memorandum should have been made available to the public during the December 6 hearing at the same time City Attorney Brown distributed it to the city council members.

Plaintiffs filed the present complaint for declaratory and injunctive relief and writ petition in February 2012. Following extensive briefing and a hearing on the merits, the trial court issued a 32-page ruling denying the complaint for injunctive and declaratory relief, and writ petition. Judgment in favor of the City was entered in December 2012. This appeal followed.

### III. DISCUSSION

A. *There Was No Brown Act Violation*

Plaintiffs claim the City violated section 54957.5, subdivision (a) of the Brown Act when the mayor refused to give Briggs a copy of the legal memorandum until after the December 6 hearing concluded. We conclude the legal memorandum was attorney-client privileged—contrary to City Attorney Brown's indication during the December 6

7

hearing that it was *not* attorney-client privileged, and would be made available to the public. (§ 6254, subd. (k).) Accordingly, the City was not required to provide a copy of the legal memorandum to Briggs during the December 6 hearing, that is, "upon [Briggs's] request without delay."[3] (§ 54957.5, subd. (a).)

Section 54957.5, subdivision (a) of the Brown Act states: "[A]gendas of public meetings *and any other writings*, when distributed to all, or a majority of all, of the members of a legislative body of a local agency by any person in connection with a matter subject to discussion or consideration at an open meeting of the body, are disclosable public records under the California Public Records Act . . . and shall be made available upon request without delay. *However, this section shall not include any writing exempt from public disclosure under Section . . . 6254 . . . .*" (Italics added.)

All public records are subject to disclosure under the California Public Records Act (the PRA) (Gov. Code, § 6250 et seq.), "'"unless the Legislature has *expressly* provided to the contrary."' [Citations.]" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166-167.) Section 6254, subdivision (k) of the PRA exempts from disclosure as public records, "[r]ecords, the disclosure of which is exempted or prohibited

---

[3] Plaintiffs do not claim the ordinance is invalid based on the City's alleged violation of section 54957.5 of the Brown Act; instead, they seek a judicial declaration that the City's failure to make the legal memorandum available to Briggs before or during the December 6 hearing violated section 54957.5 of the Brown Act. (Cf. § 54960 [mandamus, injunction, and declaratory relief action available to enjoin further Brown Act violations by legislative bodies or local agencies] with § 54960.1 [prejudice must be shown in order to invalidate a decision based on a Brown Act violation]; *Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 670-671.)

8

pursuant to . . . provisions of the Evidence Code relating to privilege." Privileged records exempt from disclosure under the PRA include records that are attorney-client privileged. (Evid. Code, § 954; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370 (*Roberts*).)

As the *Roberts* court explained, the Brown Act "does not purport to abrogate the [attorney-client] privilege as to written legal advice transmitted from counsel to members of the local governing body." (*Roberts, supra,* 5 Cal.4th at p. 381.) Additionally, *Roberts* clarified that "a local governing body is the holder of the attorney-client privilege with respect to written legal opinions by the governing body's attorney, and may assert the privilege under [section 6254] of the [PRA] . . . ." (*Id*. at p. 373.)

Based on undisputed facts, the trial court ruled the legal memorandum was *not* attorney-client privileged because none of the city council members, including the mayor, treated it as an attorney-client privileged communication during the December 6 hearing. The court noted that none of the council members, including the mayor, objected when Brown said the memorandum would "of course" be made available to the public, nor did any of the council members or the mayor object when Brown discussed the contents of the memorandum during the hearing. Accordingly, the court ruled the legal memorandum was not exempt from public disclosure under section 54957.5, subdivision (a) of the Brown Act or 6254, subdivision (k) of the PRA.

Still, the trial court concluded there was no actionable Brown Act violation, because the legal memorandum was provided to Briggs, and was made available to other members of the public, immediately after the December 6 hearing in accordance with

9

section 54957.5, *subdivision (c)* of the Brown Act.  That provision states:  "Writings that are public records under subdivision (a) and that are distributed during a public meeting shall be made available for public inspection at the meeting if prepared by the local agency or a member of its legislative body, *or after the meeting if prepared by some other person*."  (Italics added.)

The court concluded the legal memorandum was not prepared by the City or a member of the city council, but by "some other person," namely, City Attorney Brown, and the memorandum was thus "not required to be made available for public inspection until *after* the [December 6 hearing]."  And because the legal memorandum was made available to the public immediately after the December 6 hearing, the court concluded there was no actionable Brown Act violation.

We agree there was no Brown Act violation, but for different reasons than the trial court adopted.  Based on undisputed facts, we conclude the legal memorandum was attorney-client privileged, and the privilege was not waived during the December 6 hearing.  (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 718 [appellate court independently reviews relevant law where the relevant facts are undisputed and the matter presents a purely legal question].)  The memorandum was therefore exempt from public disclosure during the hearing, under section 54957.5, subdivision (a) of the Brown Act, and was not a disclosable public record under section 6254, subdivision (k) of the PRA.  It is therefore unnecessary to address whether the

10

memorandum was properly disclosed *after* the December 6 hearing, pursuant to section 54957.5, subdivision (c).

The holder of an attorney-client privilege may refuse to disclose or prevent another person from disclosing "a confidential communication between client and lawyer." (Evid. Code, § 954.) Confidential communications between a client and lawyer include "information transmitted . . . in confidence by a means which . . . discloses the information to no third persons . . . ." (Evid. Code, § 952.) The opponent of the claim of privilege has the burden of proving the communication was not confidential. (Evid. Code, § 917, subd. (a).) Additionally, the right of any person to claim the attorney-client privilege "is waived with respect to a communication protected by the privilege *if any holder of the privilege*, without coercion, has disclosed a significant part of the communication *or has consented to* disclosure made by anyone[,] [and] [c]onsent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege." (Evid. Code, § 912, subd. (a), italics added.)

Undisputed evidence shows the legal memorandum was a confidential communication between the City and City Attorney Brown, and that the city council did not waive the privilege during the December 6 hearing. The December 2 e-mail from Best Best and Krieger, which accompanied the legal memorandum when it was e-mailed to the city manager and the planning director on December 2, indicated the legal

11

memorandum was attorney-client privileged. To be sure, the legal memorandum itself did not state it was attorney-client privileged, but that is not dispositive.

City Attorney Brown's purported waiver of the privilege during the December 6 hearing was not binding on the City because there was no indication the city council members consented to the waiver. (*Roberts, supra,* 5 Cal.4th at p. 373 [local governing body is holder of attorney-client privilege regarding written legal opinions by governing body's attorney]; see Evid. Code, § 954.) None of the holders of the privilege, namely, the mayor and the other city council members, indicated they agreed the memorandum was *not* attorney-client privileged or that they were agreeing to *waive* the privilege at any time during the December 6 hearing, including when City Attorney Brown was summarizing its contents. To the contrary, by refusing to give a copy of the legal memorandum to Briggs after City Attorney Brown concluded his remarks to the council, the mayor plainly indicated he was not consenting to waive the attorney-client privilege at that time.

Accordingly, the City was not obligated to provide Briggs with a copy of the legal memorandum "upon [his] request without delay," that is, *during* the December 6 hearing, when Briggs requested he be allowed to review the memorandum before he made his presentation in opposition to the extension ordinance. (§ 54957.5, subd. (a).) It is immaterial to plaintiffs' Brown Act claim that a copy of the legal memorandum was distributed to Briggs immediately following the December 6 hearing.

12

B. *Plaintiffs Were Not Deprived of a Fair Hearing on the Ordinance*

Plaintiffs next claim the City deprived them of their due process right to a fair hearing on the ordinance, under Code of Civil Procedure section 1094.5, because the mayor refused to allow Briggs to review the legal memorandum before he addressed the city council on the ordinance during the December 6 hearing, and also because the City failed to produce copies of all permits to be extended by the ordinance in response to OMVA's November 16 public records request. This claim also lacks merit.

Code of Civil Procedure section 1094.5 governs judicial inquires "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . . ." (Code Civ. Proc., § 1094.5, subd. (a).) But as a matter of law and as the trial court found, the adoption of the extension ordinance was not an administrative order or decision; it was a legislative act. (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 172, fn. 2 [amendment or adoption of an ordinance is a legislative act].)[4]

Judicial review of legislative acts is governed by Code of Civil Procedure section 1085, not section 1094.5. (*Friends of Sierra Madre v. City of Sierra Madre, supra,* 25

---

[4] "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2.) By extending, by one year, the expiration dates of all previously-approved development plans and other permits set to expire by March 1, 2013, the ordinance established a rule that applied prospectively. It did not adjudicate a particular matter by applying a rule to a specific set of existing facts.

Cal.4th at p. 172, fn. 2.) Under Code of Civil Procedure section 1085, "'"'review is limited to an inquiry into whether the action was arbitrary, capricious or entirely lacking in evidentiary support, . . .'" . . . [and] [t]he petitioner has the burden of proof to show that the decision is unreasonable or invalid as a matter of law. [Citation.] . . . .'" (*City of Arcadia v. State Water Resources Control Bd.* (2006) 135 Cal.App.4th 1392, 1409.) This test also involves inquiry whether the legislative action was "'contrary to established public policy or unlawful or procedurally unfair.'" (*Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303.)[5]

Plaintiffs have not shown the adoption of the ordinance was procedurally unfair. (Code Civ. Proc., § 1085.) As discussed, plaintiffs were not entitled to review the attorney-client privileged legal memorandum before or during the December 6 hearing, in order to assist them in protesting the adoption of the ordinance. To the contrary, the city council, as the holder of the attorney-client privilege, had the right to prevent the disclosure of the legal memorandum to the public, including plaintiffs and their counsel, Briggs. (Evid. Code, § 954.) The mayor exercised that privilege on behalf of the council during the hearing, when he refused to provide a copy of the legal memorandum to Briggs during the hearing. And because the legal memorandum was attorney-client

---

[5] Judicial inquiries under Code of Civil Procedure section 1085 are generally questions of law subject to de novo review on appeal. (*Mike Moore's 24-Hour Towing v. City of San Diego, supra,* 45 Cal.App.4th at p. 1303.) The only exception occurs when the trial court makes findings on foundational matters of fact; we are bound by such findings if substantial evidence supports them. (*Ibid.*)

14

privileged, it was not a disclosable public record under either the PRA or the Brown Act. (Gov. Code, §§ 6254, subd. (k), 54957.5, subd. (a).)[6]

Further, the legal memorandum contained no evidence or information concerning the ordinance that was not known to plaintiffs at the time of the December 6 hearing. The memorandum simply analyzed the objections to the extension ordinance that were raised in OMVA's November 15 letter opposing the ordinance. The letter claimed the ordinance would violate the OMC, CEQA, and other law, and the memorandum analyzed these claims without reference to any information that was not already available to the public.

Regarding OMVA's CEQA objections, the legal memorandum concluded the ordinance was exempt from environmental review under CEQA because it was not a "project" within the meaning of CEQA. (Cal. Code Regs., tit. 14, § 15378 (Guidelines) ["project" means "the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment"].) Guideline section 15378 and related Guidelines were cited in the proposed extension ordinance itself, and in the staff report on the ordinance, as the reason the City concluded the ordinance was exempt from environmental review. The

___

[6] The cases plaintiffs rely on to support their claim they were denied a fair hearing on the extension ordinance involved adjudicatory, not legislative actions. (E.g., *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81 [administrative appeal of adult entertainment regulatory permit]; *English v. City of Long Beach* (1950) 35 Cal.2d 155 [civil service board hearing regarding police officer dismissal]; *Volstedt v. City of Stockton* (1990) 220 Cal.App.3d 265 [civil service commission hearing regarding demotion of city employee].)

15

proposed ordinance and the staff report were available to plaintiffs and their counsel Briggs before the December 6 hearing.

In rejecting plaintiffs' due process/fair hearing claim, the trial court impliedly found Briggs received the City's November 22 letter to him, along with a listing of all permits to be affected by the ordinance, in response to OMVA's November 16 public records request. We are bound by this finding because substantial evidence supports it. (*City of Arcadia v. State Water Resources Control Bd., supra,* 135 Cal.App.4th at p. 1409.) Indeed, the administrative record shows the City sent Briggs a three-page listing of all permits to be extended by the ordinance, along with the City's November 22 letter, in response to OMVA's November 16 public records request. The City's November 22 letter also directed Briggs to the "City Clerk / Records Management Department" if he wished to "view the available files" regarding any of the permits to be extended by the ordinance.

C. *There Was No CEQA Violation*

Plaintiffs claim the City violated CEQA in concluding the extension ordinance was not a "project" subject to environmental review under CEQA. (Pub. Resources Code, § 21065 and Guidelines, §§ 15378 [defining "project" for purposes of CEQA], 15060, subd. (c)(3) [activity not subject to CEQA if it is not a "project" as defined in Guidelines, § 15378], 15061, subd. (b)(3) [a "project" is exempt from CEQA if "it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment"].) We find no CEQA violation.

16

CEQA and the Guidelines "embody California's strong public policy of protecting the environment. 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' (Cal. Code Regs., tit. 14, § 15002.)" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285-286.)

CEQA and the Guidelines establish a three-tiered process in order to ensure that public agencies inform their development-related decisions with environmental considerations. (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 257; Guidelines, § 15002, subd. (k) [describing three-step process].) The first tier of the process is jurisdictional, and requires the agency to conduct a preliminary review to determine whether the proposed activity in question—here, the ordinance—is subject to CEQA. (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380.) An activity is not subject to CEQA if it is not a "project" as defined in Guidelines section 15378. (Guidelines, § 15060, subd. (c)(3); Pub. Resources Code, § 21065 [defining "project"].)

17

Guidelines section 15378 defines a project as "the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . ." "The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (Guidelines, § 15378, subd. (c).)

If the agency properly finds an activity is not a project, the activity is exempt from CEQA (Guidelines, § 15061, subd. (b)(3)), and no further environmental review is necessary (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego, supra,* 139 Cal.App.4th at p. 258). The agency need only prepare and file a notice of exemption (Guidelines, §§ 15061, subd. (d), 15062, subd. (a)), citing the relevant statute or section of the Guidelines the agency is relying upon to support the exemption finding, and including a brief statement of reasons to support the exemption finding (Guidelines, § 15063, subd. (a)). The notice of exemption must be filed following the agency's approval of the activity in question. (Guidelines, § 15062, subd. (a).)

In January 2012, following its adoption of the extension ordinance, the City filed a notice of exemption stating the ordinance was not subject to CEQA under Guidelines sections 15061, subdivision (b)(3) and 15060, subdivision (c)(3), because it would not result in a direct or reasonably foreseeable indirect change in the environment, and was

18

thus not a project within the meaning of Guidelines section 15378.[7]  Under Guidelines

section 15061, subdivision (b)(3), known as the "common sense exemption" to CEQA,

an activity is not subject to CEQA "[*w*]*here it can be seen with certainty* that there is no

possibility that the activity in question may have a significant effect on the environment

. . . ." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com., supra,* 41 Cal.4th at

p. 380; *Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106, 115 [noting

distinction between categorical exemptions under Guidelines, § 15061, subd. (b)(2) and

the "'common sense exemption'" of § 15061, subd. (b)(3)].)

Whether an activity is a project for purposes of CEQA is a question of law we may

determine based on undisputed evidence in the appellate record.  (*Muzzy Ranch Co. v.

Solano County Airport Land Use Com., supra,* 41 Cal.4th at p. 382.)  Based on

undisputed evidence, we agree with the trial court that the City properly determined the

extension ordinance was not a project, and was therefore exempt from CEQA, under the

common sense exemption of section 15061, subdivision (b)(3) of the Guidelines.

(Guidelines, §§ 15061, subd. (b)(3), 15378.)

Indeed, the extension ordinance did not approve any new development permits; it

only extended, by one year, the expiration dates of previously-approved permits which

would have otherwise expired by March 1, 2013.  As such, the ordinance was certain to

have no direct or reasonably foreseeable indirect environmental impacts—beyond the

---

**7**  The same exemption findings were made in support of the similar extension
ordinances the City adopted in March 2009, January 2010, and March 2011.

impacts resulting from the original approval of the permits the ordinance extended. Presumably, the underlying permits underwent environmental review, to the extent required by law, when they were originally approved.

Relying principally on *Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 328, plaintiffs argue the starting point for determining whether the ordinance would have any environmental impacts was the "existing physical conditions" on the ground, that is, the "baseline" environmental conditions as of December 6, 2011, when the City voted to adopt the ordinance, and not earlier, when the council approved the underlying permits extended by the ordinance. But plaintiffs have not explained how extending the expiration dates of any of the previously-approved permits would have resulted in any direct or reasonably foreseeable indirect environmental impacts beyond the impacts associated with the permits when they were originally approved. (Guidelines, § 15378.)

*Communities for a Better Environment* is also inapposite because it involved a project—a proposal by a petroleum refinery operator to increase its operating capacity. (*Communities for a Better Environment v. South Coast Air Quality Management Dist., supra* 48 Cal.4th at p. 317.) The state Supreme Court concluded the baseline for determining whether the increased capacity would have any environmental impacts was the level of emissions the refinery produced before the proposed increase in its capacity, not the higher level of emissions the refinery was allowed to produce, but had never produced, under its existing permits. (*Id*. at pp. 317, 320-322.) In contrast, the ordinance

20

is not a project because there was no possibility it would have any significant environmental effects. (Guidelines, § 15061, subd. (b)(3).) As such, there is no question of the proper baseline for assessing any enviromental impacts of the ordinance.

Plaintiffs claim the City failed to substantiate its exemption determination because the notice of exemption does not include a statement of reasons to support its finding that the extension ordinance was exempt from CEQA. Among other things, a notice of exemption must include a brief description of the project and "[a] brief statement of reasons" to support the agency's finding that the activity in question is exempt from CEQA. (Guidelines, § 15062, subd. (a).) Here, the notice of exemption satisfied these requirements. It describes the project as "[a]n ordinance . . . granting a one-year time extension to all development plan, conditional use permit and variance approvals which are active and due to expire on or before March 1, 2013" (Guidelines, § 15062, subd. (a)(1)), and states the ordinance is not subject to CEQA because it will not result in a direct or reasonably foreseeable indirect physical change to the environment (Guidelines, § 15062, subd. (a)(4)). In light of the project description, the reference to the common sense exemption in the notice is a sufficient "statement of reasons" to support the City's conclusion that the ordinance was exempt from CEQA.

D. *The City Did Not Violate the OMC in Adopting the Ordinance*

Plaintiffs claim the City "did not follow its own municipal code provisions for extending permits" in adopting the extension ordinance. They rely on OMC provisions that apply when *an applicant* requests an extension of time to implement a development

21

plan, conditional use permit, or variance.  (OMC §§ 9-1.0835 [development plan extensions], 9-1.0950 [conditional use permit extensions], 9-1.1035 [variance extensions].)  None of these provisions apply here, because none of the permit holders applied to extend their permits; instead, the City proposed adopting the ordinance.  The OMC contains no provisions governing the City's adoption, on its own initiative, of ordinances extending development plans, conditional use permits, or variances.  And as plaintiffs concede, the City was authorized to adopt the ordinance pursuant to its general police power.  (See § 37100 [city legislative body may pass ordinances not in conflict with state or federal law].)

Plaintiffs further argue the city council failed to follow applicable procedures set forth in the OMC for amending the Ontario development code, including (1) OMC section 9-1.0305, which provides, "[a]n amendment may also be initiated by . . . action of the City Council in the form of a request to the Planning Commission . . . ."; and (2) OMC section 9-1.0330.  These provision were inapplicable simply because *the ordinance did not amend the City's development code*.  Nor does the Ontario development code contain any provisions governing the city council's authority to extend the expiration dates of any outstanding development permits.

Plaintiffs also point to OMC section 9-1.0330, which provides:  "When a public hearing is held in order to approve *the application*, the Council shall make a specific finding that the amendment application is consistent with the objectives of the Development Code and the General Plan."  (Italics added.)  This provision did not apply

22

because the ordinance was initiated by the city council, not an applicant, and the ordinance did not amend the development code or the general plan.

Finally, plaintiffs rely on *Tustin Heights Assn. v. Bd. of Supervisors* (1959) 170 Cal.App.2d 619 to support their claim that the City was bound by provisions of the OMC in adopting the ordinance. Again, however, nothing in the OMC governed the city council's adoption, on its own initiative, of the ordinance. In *Tustin Heights*, the board of supervisors violated county ordinances in approving an *amended* application for a conditional use permit after the county planning commission rejected the applicant's original application. (*Id*. at pp. 629-630.) The court concluded that the board's approval of the *amended* application violated county ordinances, because the planning commission had not reviewed the amended application. (*Id*. at p. 630.) But here, the City violated none of its municipal or development code provisions in adopting the ordinance.

## IV.  DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
_____
J.

We concur:

McKINSTER
_____
Acting P. J.

CODRINGTON
_____
J.

23