Filed 12/18/25; Certified for Publication 1/5/26 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>COUNTY OF SAN BERNARDINO et al.,<br><br>　　Defendants and Appellants,<br><br>CONSOLIDATED FIRE AGENCIES,<br><br>　　Real Party in Interest and Appellant. | D085716<br><br><br>(Super. Ct. No. CIVSB2416492) |

APPEAL from an order of the Superior Court of San Bernardino, Jay H. Robinson, Judge.  Reversed and remanded with directions.

Hooper, Lundy & Bookman, Jordan Kearney, Devin M. Senelick and Erin Sclar for Defendants and Appellants County of San Bernardino, County of San Bernardino Board of Supervisors, and Inland Counties Emergency Medical Agency.

Kingsley Bogard, Lindsay K. Moore; Wright, L'Estrange & Ergastolo, Andrew E. Schouten, Davin H. Kono and Erica L. Nolen for Real Party in Interest and Appellant Consolidated Fire Agencies.

William L. Adams for amicus curiae on behalf of Appellants.

Larson, Stephen G. Larson, Jonathan E. Phillips, Mehrunisa Ranjha, and Benjamin Falstein for Plaintiff and Respondent American Medical Response of Inland Empire.

For decades, American Medical Response of Inland Empire (AMR) was the exclusive provider of emergency medical services (EMS) for San Bernardino County. In 2022, the County initiated a competitive process to improve its EMS system and issued a request for proposal (RFP) seeking bidders for a new exclusive contract to provide EMS services. The RFP set forth three overarching goals for its procurement process—to improve service delivery to customers and partners, to establish a more efficient EMS system, and to make investments back into the system. Two organizations responded to the RFP—AMR and appellant and real party in interest Consolidated Fire Services (ConFire). At the conclusion of the bidding process, the County's Board of Supervisors selected ConFire as its EMS provider. AMR, displeased with the outcome of the process, unsuccessfully protested the decision and then filed suit seeking to reverse the County's decision.

AMR filed its first lawsuit in the Federal District Court for the Central District of California. That court dismissed AMR's federal antitrust claim, without leave to amend, based on the *Parker* immunity doctrine and declined

to exercise jurisdiction over AMR's state law claims.[1] AMR appealed the District Court's decision, and filed the underlying complaint and petition for writ of mandate in San Bernardino County Superior Court. In this case, AMR brought a motion for a preliminary injunction seeking to enjoin the County and ConFire from proceeding with their contract. The trial court granted AMR's motion and enjoined the County and ConFire "from performing, proceeding under, or implementing services pursuant to the contract for Advanced Life Support and Basic Life Support Ground Ambulance Services, Interfacility and Critical Care Transport Services for the exclusive operating areas" at issue during the pendency of the lawsuit.

The County and ConFire appeal from the preliminary injunction order, asserting the trial court improperly determined the County had a ministerial duty to advance only AMR's proposal to the County's Board of Supervisors because it was the "highest-scoring" proposal. Further, the County and ConFire assert the County did not abuse its discretion by advancing both ConFire's and AMR's proposals to the Board and ultimately selecting ConFire as the provider. AMR, of course, asserts the trial court did not err in its findings and, therefore, its decision granting the preliminary injunction should be affirmed.

As we shall explain, we agree with the County and ConFire that the trial court erred by concluding the County had a ministerial duty to advance only AMR's proposal. Further, we hold the trial court erred by imposing the

---

[1]    In *Parker v. Brown* (1943) 317 U.S. 341, the U.S. Supreme Court held that the Sherman Antitrust Act "did not apply to anticompetitive restraints imposed by the States." (*City of Columbia v. Omni Outdoor Advertising* (1991) 499 U.S. 365, 370 (*Omni Outdoor*).) The Court later clarified that a local government is entitled to *Parker* immunity when its restriction on competition is "an authorized implementation of state policy." (*Ibid.*)

preliminary injunction because AMR does not have a likelihood of prevailing on its claim that the County abused its discretion under either the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act (the EMS Act, Health & Saf. Code, § 1797 et seq.[2]) or the RFP. Accordingly, the order is reversed. On remand, the trial court is directed to enter an order denying AMR's motion for a preliminary injunction and to reconsider the amount of the undertaking previously imposed on AMR in light of this court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

AMR began operating as the ambulance service provider for the County in the late 1970s. Since that time, the County has retained AMR as its exclusive EMS provider, grandfathered into its system in accordance with section 1797.224 of the EMS Act. That provision, which was enacted in 1984, states in pertinent part that "[a] local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. No competitive process is required if the local EMS agency develops or implements a local plan that continues the use of existing providers operating within a local EMS area in the manner and scope in which the services have been provided without interruption since January 1, 1981. A local EMS agency which elects to create one or more exclusive operating areas in the development of a local plan shall develop and submit for approval to the authority, as part of the local EMS plan, its competitive process for selecting providers and determining the scope of their operations.

---

[2]    Subsequent undesignated statutory references are to the Health and Safety Code.

4

This plan shall include provisions for a competitive process held at periodic intervals." (§ 1797.224.)

Over the course of several years, the County developed a competitive process to select a new EMS provider in accordance with section 1797.224, which culminated with the issuance of the RFP on December 20, 2022. The RFP stated its policy goals for the process were threefold: (1) "Improve services delivery to customers and external partners;" (2) "Establish a more efficient system, through transparent and outcome-based service;" and (3) "Make investments back into the EMS system." The RFP also set forth a process to evaluate bids.

Section I of the RFP provides an introduction and background, which identifies the stated policy goals, the scope of work and proposed enhancements to the EMS system sought by the County, and descriptions of the service areas and the EMS system and its requirements. In subsection 1.3, titled "Scope of Work Summary," the County states that it "intends to award an initial five (5) year contract to the highest scoring Proposer whose proposal conforms to the RFP and whose proposal presents the greatest value to the residents and visitors in the San Bernardino County Comprehensive Service Area. The Proposal Review Committee (Committee) will evaluate all proposals based on the evaluation criteria score sheet as established in this RFP. The County realizes that criteria other than price is important and will award a contract based on the highest scoring proposal that demonstrates the best value and meets the needs of the County."

Section II of the RFP sets forth instructions for proposers. It explains the proposal process in detail and begins by stating that "[t]he County intends to award a contract to the respondent whose proposal meets all of the [RFP] criteria and receives the highest score from the scoring sheet as

5

evaluated by the [Committee] and best meets the needs of the County." Section II then explains pre-submittal activities, explaining how to submit questions about the RFP; the required "Proposers' Conference;" the proposal content and organizational requirements; the process for submission and correction of errors in proposals; guidelines for proposers' contact with County employees; and the process for withdrawal of proposals.

Subsection 2.12 is titled "Selection." Part A of this subsection states that proposals that do not conform to the instructions in the RFP will be rejected but that the County can waive, "in its sole discretion," non-consequential deviations. Part B states, "The County will establish a non-biased Proposal Review Committee. Each member of the Committee will evaluate and score the proposals based on the criteria specified in the solicitation scoring sheet. The scores from all the evaluators will be calculated to arrive at a final score for each proposal. All Proposals will be evaluated and scored by the Committee and will be invited to participate in an oral presentation of their proposal. The Committee will recommend the highest scoring Proposer for final negotiation of contract terms."

The next subsection, 2.13, is titled "Negotiations and Notice of Intent To Award." It states, "The County may require the potential Proposer(s) selected to participate in negotiations. This may include cost, technical, or other clarifications needed for contract award." Part A then provides, "After selection, negotiations may be conducted with the Proposer of the highest-ranked proposal. Negotiations, if held, shall be within the Scope of Work in the RFP." Part B concerns failure to negotiate, and states that if the selected proposer fails to negotiate or the County and proposer cannot come to terms, the County can terminate negotiations and begin negotiations "with the next highest rated Proposer." Part C, titled "Notice of Intent to Award (NOIA) –

6

Proposer Notification of Selection," states, "After the completion of contract negotiations, a written or electronic NOIA and denial letters (or a copy of the NOIA) will be issued to all Proposers."

Part D of subsection 2.13 addresses the County's ability to review the proposer's financial information. Part E, titled "Award," states, "A contract will be awarded based on the highest scoring proposal received. The content of the proposal of the successful Proposer will become contractual obligations and failure to accept these obligations in a contract may result in cancellation of the award." The next subsection, 2.14, sets forth the procedure to protest the County's award of the contract.

Section III of the RFP identifies evaluation criteria to be used by the Proposal Review Committee. This section asks proposers to provide specific information including (1) partners and subcontractors the proposer intends to use, (2) the proposer's organizational and leadership experience, (3) references, (4) the proposer's financial condition, (5) the proposer's legal history, and (6) evidence of insurance. Finally, subsection 3.3, "Evaluation Criteria," states, "Proposals will be evaluated by the Committee following the evaluation criteria outlined in Exhibit 5. Committee participants will have a broad range of experience in Emergency Medical Services, and county government administration. Committee members will have an opportunity to adjust scores based upon additional information provided during oral presentations."

The final section of the RFP, section IV, is titled "Scope of Work and Scoring Criteria." This section and its exhibits "describe elements of the proposal" to be scored and directs respondents to "organize responses using" the organizational format laid out therein. Section IV then sets forth "System Requirements," "Response Time Standards," "Clinical Performance

Standards," and asks respondents to provide specific information concerning their proposed ambulance deployment plan, vehicles, medical supplies and equipment, and personnel. In addition, section IV sets forth hospital interface, community involvement, disaster preparedness, quality management, electronic reporting, minimum service, and financial requirements for proposers.

After the RFP was issued, the County posted responses to the proposers' questions to its website. Of note, in response to a request for the identification of the members of the Proposal Review Committee, the County stated that the members would remain anonymous, but they would be required to sign a conflict of interest statement and "[a]ll procurement protocols and policies [would] be followed."[3]

The County received responses to the RFP from AMR and ConFire. Four evaluators scored both proposals. Three of the four evaluators gave ConFire a higher score. The total cumulative score for AMR, however, was higher by four points. ConFire received individual scores of: 383, 384, 363 and 385. AMR's scores were: 373, 419, 346, 381. After the proposals were scored, in June 2023, the County sent a letter to both AMR and ConFire stating that because the scores for both proposers were "substantially equivalent" it intended to "move forward with negotiations" with both entities. The County's chief administrative officer also sent an e-mail to both proposers stating that because the proposals received substantially equivalent scores, the County would begin negotiations with both, and that

---

[3]    In support of its opposition to AMR's motion for a preliminary injunction, the County submitted its Policy Manual, which sets forth general procurement policies for the Board, as well as its Procurement Manual, which contains additional general guidelines for the County's competitive procurement activities.

8

the County's staff would then make a recommendation to the Board based on the outcome of the negotiations. The e-mail also stated the timeline for the RFP would be extended to allow sufficient time for both proposers to "develop contracts that best meet the county's needs."

On October 27, 2023, the County issued a "Notice of Intent to Award," stating that "[b]ased on the evaluation, AMR received the highest score and will receive the independent evaluation committee's recommendation for award as stated in the RFP." The notice also stated that "because the difference in scores is substantially equivalent, draft contracts from each proposer will be presented to the Board of Supervisors for consideration and ultimate award. Neither staff nor the evaluation panel can legally bind the Board. Pursuant to law and County Policy, the Board is vested with the sole discretion and ultimate authority to select and approve a contract for services which best meets the needs of the County and the public."

On November 3, 2023, AMR submitted a letter protesting the County's decision to advance both proposals to the Board. AMR's counsel asserted the County failed to follow the procedure set forth in the RFP because AMR had unquestionably received the highest score from the Proposal Review Committee, and thus the County could not lawfully enter negotiations with ConFire. AMR further asserted that the County's "elevation of ConFire's proposal ... creates an appearance of favoritism and bias toward the fire agency, and puts politics over the health and safety of its citizens. The County is therefore at risk of acting in an arbitrary and capricious manner because it has not adhered to the safeguards put in place to prevent bias and other arbitrary factors from influencing the bid selection."

On November 28, 2023, the County sent a letter to AMR denying its protest. Therein, the County explained that only the Board had the authority

9

to approve a contract with the proposers and the RFP did not prohibit the County from entering contract negotiations with both AMR and ConFire. The letter also highlighted the fact that subsection 2.13 of the RFP explicitly stated " 'the County may require the potential Proposer*(s)* selected to participate in negotiations.' ***Emphasis added.***" Further, the letter stated that subsection 2.1 explained the intent of the RFP was " 'to award a contract to the respondent whose proposal meets all of the [RFP] criteria and receives the highest score from the scoring sheet as evaluated by the Proposal Review Committee ... *and best meets the needs of the County.' (Italics added.)*" Two days later, on November 30, 2023, AMR submitted a notice of protest, again challenging the County's decision to negotiate with both proposers and setting forth the same arguments contained in its earlier letter.

At a regular meeting of the County's Board on December 5, 2023, AMR and ConFire each presented their proposals. Thereafter, the Board heard several public comments in support of each proposal, including from representatives of cities within the exclusive operation area for which the RFP was issued. At the conclusion of the hearing, the Board voted to deny AMR's protest and award the service contract to ConFire.

On February 2, 2024, AMR filed suit in Federal Court in the Central District of California. (*American Medical Response of Inland Empire v. County of San Bernardino* (C.D.Cal., Apr. 19, 2024, No. EDCV 24-0267-KK-SPX) 2024 U.S. Dist. Lexis 72130, affd. (9th Cir., Apr. 30, 2025, No. 24-3195) 2025 U.S. App. Lexis 10389.) In that initial lawsuit, AMR alleged the County, Inland County Emergency Medical Agency (ICEMA), the Board, and ConFire violated the Sherman Antitrust Act. (*Ibid*.) AMR also sought a peremptory writ of mandamus under Code of Civil Procedure sections 1085 and 1094.5, and declaratory relief under section 1060. (*Ibid*.) In response,

10

the defendants moved to dismiss the lawsuit on the grounds they were immune from antitrust liability under the *Parker* doctrine and asked the court to decline to exercise supplemental jurisdiction over the state law claims. (*Ibid.*) On April 19, 2024, the District Court granted the motion and dismissed the claims without leave to amend. (*Ibid.*)

On April 30, 2024, AMR filed the underlying lawsuit. AMR asserted a claim for writ of mandamus under Code of Civil Procedure section 1085 and declaratory relief under section 1060. On June 12, 2024, AMR moved for a preliminary injunction seeking to stop the County from proceeding with the contract it entered with ConFire. After briefing and argument, on September 12, 2024, the trial court granted AMR's motion and issued a statement of decision explaining the basis for its ruling.[4]

The trial court found that the County's selection of an EMS provider was ministerial in nature because it was directed by the EMS Act and the RFP. Further, the court concluded AMR was likely to prevail on the merits of its claim because the RFP required the County to negotiate only with the proposer with the highest score, which the court found to be AMR. The trial court stated the County's "reliance on general principles of 'best value' and 'best needs of the County' [was] unavailing" and "[n]othing in the RFP allowed for 'substantially equivalent scores' to go to negotiations."

The court also hedged its ruling by concluding that even if the County's decision was not ministerial in nature, it constituted an abuse of discretion because the process it ultimately followed was not set forth in the RFP: "The text of the RFP provides no authority for how County Defendants elected to proceed under the NOIA. None." The court then set forth a list of rhetorical

---

[4] The trial court subsequently issued an amended order correcting a factual error unrelated to the issues on appeal.

questions, including, "Where in the RFP did the County derive the authority to forward two proposals with 'substantially equivalent' scores?" and "How does the RFP define 'substantially equivalent scores?" The court stated these unanswered questions showed the RFP did not authorize the County to award the EMS contract to a provider other than AMR as the proposer with the highest score.

After finding AMR was likely to prevail on the merits of its claims, the trial court also found that the balance of harms weighed in favor of granting the preliminary injunction. The court first found that because AMR was likely to prevail, the need to show harm absent the preliminary injunction was low. The court further found the potential harm to AMR would be "tantamount to closing a business" and, therefore, it could not be remedied through monetary damages. The court also found that imposing the prohibitory injunction would maintain stability in the County's EMS system while the case was adjudicated. Finally, the court imposed an undertaking on AMR, requiring it to post a bond for $181,000, far less than the amount sought by ConFire in its opposition to AMR's motion.

Thereafter, ConFire objected to the bond amount, asserting it was insufficient to provide security against the foreseeable losses arising from the injunction if it were reversed. The trial court issued an order increasing the undertaking to $200,220 to reflect reasonable attorney's fees and costs, but finding no additional security for expected revenue loss was necessary because AMR was likely to succeed on the merits of its petition.

ConFire and the County timely appealed the court's order imposing the preliminary injunction and ordering AMR to post a bond.[5]

## DISCUSSION

On appeal from the court's order granting the preliminary injunction, the County, the Board and ICEMA (collectively, County) assert the trial court erred by finding the County's decision to advance both AMR's and ConFire's proposals to the Board and ultimately award the contract to ConFire was ministerial in nature. The County argues the court misinterpreted section 1797.224 and the EMS Act more broadly, which gives local agencies discretion and authority to implement EMS plans that meet the needs of their unique areas, and that the court's order improperly usurped this authority. Finally, the County argues the trial court also erred by finding the balance of harms favored granting the preliminary injunction.

For its part, ConFire also argues the trial court's determination that the County's actions were ministerial was incorrect and that the County did not abuse the discretion vested to it by the EMS Act. In addition, ConFire

---

[5] After the opening briefs were submitted, the Ninth Circuit Court of Appeals affirmed the federal district court's dismissal of AMR's antitrust claims without prejudice on the grounds the claim was barred by *Parker* immunity. AMR did not address the decision in its respondent's brief, but both ConFire and the County raised the issue of collateral estoppel in their reply briefs, asserting that the appellate memorandum opinion in the federal appeal barred AMR's claim for writ of mandamus. At AMR's request, we permitted it to file a supplemental brief addressing this issue and we also permitted ConFire and the County to file supplemental reply briefs concerning the impact of the federal case.

In addition, the day before oral argument in this case, AMR filed a request for judicial notice alerting this court that the trial court had issued a final statement of decision and order granting AMR's petition for writ of mandate. Because the order was issued long after the notice of appeal, it is outside the scope of our review. Accordingly, the request is denied.

contends the trial court abused its discretion by substituting its judgment for that of the County.  ConFire also asserts the trial court erred by setting the amount of AMR's bond during the pendency of the litigation too low.

I

*Legal Standards*

A

*The EMS Act*

"Prior to the enactment of the EMS Act, the law governing the delivery of prehospital emergency medical services was haphazard.  For example, the Government Code identified ambulance services as among the permissible ' "[m]unicipal services or functions" ' of counties, cities, and public districts. (Gov. Code, § 54980, subds. (b), (c).)  Although these entities were permitted to contract with one another for the performance of ambulance services  (*id.*, § 54981), nothing required them to coordinate or integrate their operations in any fashion." (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 914 (*San Bernardino*).)

"As finally enacted in late 1980, the EMS Act ... created a comprehensive system governing virtually every aspect of prehospital emergency medical services.  The Legislature's desire to achieve coordination and integration is evident throughout." (*San Bernardino, supra*, 15 Cal.4th at p. 915.)  "The EMS Act accomplishes this integration through what is essentially a two-tiered system of regulation.  At the state level, the Emergency Medical Services Authority (Authority) performs a number of different functions relating to the coordination of EMS throughout the state, including the following:  (1) assessing each emergency medical services area 'utilizing regional and local information ... for the purpose of determining the need for additional emergency medical services, coordination of emergency

14

medical services, and the effectiveness of emergency medical services'
(§ 1797.102); (2) developing 'planning and implementation guidelines for
emergency medical services systems,' addressing personnel and training,
communications, transportation, assessment of hospitals and critical care
centers, system organization and management, data collection and
evaluation, public information and education, and disaster response
(§ 1797.103); (3) providing 'technical assistance to existing agencies, counties,
and cities for the purpose of developing the components of emergency medical
services systems' (§ 1797.104); [and] (4) reviewing emergency medical
services plans submitted by local EMS agencies to determine whether the
plans 'effectively meet the needs of the persons served,' are 'consistent with
coordinating activities in the geographical area served,' and are 'consistent
with ... both the guidelines and regulations, established by the [A]uthority'
(§ 1797.105, subds. (a), (b))." (*San Bernardino, supra*, 15 Cal.4th at p. 915.)

"The second tier of governance under the EMS Act is occupied by the
local EMS agency.  Its duties are enumerated in chapter 4 of the act, entitled
'Local Administration.'  (§§ 1797.200–1797.276.)  Section 1797.200 provides
that '[e]ach county may develop an emergency medical services program.
Each county developing such a program shall designate a local EMS agency
which shall be the county health department, an agency established and
operated by the county, an entity with which the county contracts for the
purposes of local emergency medical services administration, or a joint
powers agency created for the administration of emergency medical services
by agreement between counties or cities and counties pursuant to the
provisions of Chapter 5 (commencing with Section 6500) of Division 7 of

Title 1 of the Government Code.' " (*San Bernardino, supra*, 15 Cal.4th at p. 916.)

Additional authority is granted to the local EMS agency (LEMSA) in chapter 5, "entitled 'Medical Control' (see §§ 1798–1798.6). It provides that '[t]he medical direction and management of an emergency medical services system shall be under the medical control of the medical director of the local EMS agency. This medical control shall be maintained in accordance with standards for medical control established by the [A]uthority.' (§ 1798, subd. (a).) Chapter 5 also requires that '[m]edical control shall be within an EMS system which complies with the minimum standards adopted by the [A]uthority, and which is established and implemented by the local EMS agency.' (§ 1798, subd. (b).)" (*San Bernardino, supra*, 15 Cal.4th at p. 916.)

"In 1984, the EMS Act was amended (see sections 1797.6, 1797.85, and 1797.224) for the purpose of authorizing local EMS agencies to grant exclusive operating areas to private EMS providers such as ambulance companies. Such authorization was necessary to immunize the agencies from liability under the United States Supreme Court's then-recent decision holding that local governments granting monopolies would not be exempt from antitrust laws unless they acted pursuant to ' "clearly articulated and affirmatively expressed" ' state policy. (*Community Communications Co. v. Boulder* (1982) 455 U.S. 40, 51.)" (*San Bernardino, supra*, 15 Cal.4th at pp. 917–918.) Section 1797.6 sets forth the amendments' purpose, stating: "(a) It is the policy of the State of California to ensure the provision of effective and efficient emergency medical care. The Legislature finds and declares that achieving this policy has been hindered by the confusion and concern in the 58 counties resulting from the United States Supreme Court's holding in *Community Communications Company, Inc. v. City of Boulder,*

16

*Colorado*, 455 U.S. 40, regarding local governmental liability under federal antitrust laws. [¶] (b) It is the intent of the Legislature in enacting this section and Sections 1797.85 and 1797.224 to prescribe and exercise the degree of state direction and supervision over emergency medical services as will provide for state action immunity under federal antitrust laws for activities undertaken by local governmental entities in carrying out their prescribed functions under this division."

Section 1797.224, as stated previously, provides, "A local EMS agency may create one or more exclusive operating areas in the development of a local [EMS] plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. ... A local EMS agency which elects to create one or more exclusive operating areas in the development of a local plan shall develop and submit for approval to the authority, as part of the local EMS plan, its competitive process for selecting providers and determining the scope of their operations. This plan shall include provisions for a competitive process held at periodic intervals."

An exclusive operation area (EOA) is defined by the EMS Act as "an EMS area or subarea defined by the emergency medical services plan for which a local EMS agency, upon the recommendation of a county, restricts operations to one or more emergency ambulance services or providers of limited advanced life support or advanced life support." (§ 1797.85.) "The creation of an EOA is an ' "important administrative tool for designing an EMS system" ' because 'an EOA permits local EMS agencies to offer private emergency service providers protection from competition in profitable, populous areas in exchange for the obligation to serve unprofitable, more

17

sparsely populated areas.' " (*County of Butte v. Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175, 1182.)

B

*Writ of Mandate*

" ' "A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion ... is the power conferred on public functionaries to act officially according to the dictates of their own judgment." ' (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700.) 'Generally, mandamus may be used only to compel the performance of a duty that is purely ministerial in character. [Citation.] The remedy may not be invoked to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular way.' (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1002.)" (*HNHPC, Inc. v. Department of Cannabis Control* (2023) 94 Cal.App.5th 60, 70 (*HNHPC*).)

However, " '[w]hile a party may not invoke mandamus to force a public entity to exercise discretionary powers in any particular manner, if the entity refuses to act, mandate is available to compel the exercise of those discretionary powers in some way.' " (*HNHPC, supra,* 94 Cal.App.5th at p. 70.) "Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner. Mandamus may issue, however, to compel an official both to exercise his discretion (if he is required by law to do so) and to exercise it under a proper interpretation of the applicable law." (*Common Cause v. Board of Supervisors* (1989) 49

18

Cal.3d 432, 442 (*Common Cause*); see *Khan v. Los Angeles City Employees'* *Retirement System* (2010) 187 Cal.App.4th 98, 105 ["A writ of traditional mandamus (Code Civ. Proc., § 1085) may be used to compel the performance of a duty that is purely ministerial in nature or to correct an abuse of discretion."].)

Further, "[m]andamus may issue to correct the exercise of discretionary legislative power, *but only* if the action taken is so palpably unreasonable and arbitrary as to show an abuse of discretion as a matter of law. This is a highly deferential test." (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1265 (*Carrancho*).) "Our 'inquiry is whether the record shows a reasonable basis for the action of the legislative body, and if the reasonableness of the decision is fairly debatable, the legislative determination will not be disturbed.'" (*Weinstein v. County of Los Angeles* (2015) 237 Cal.App.4th 944, 965 (*Weinstein*).)

In general, "' "[a] public entity's ' "award of a contract, and all of the acts leading up to the award, are legislative in character." ' " ' " (*Michael Leslie Productions, Inc. v. City of Los Angeles* (2012) 207 Cal.App.4th 1011, 1020.) However, "[w]hether a statute imposes a ministerial duty is a question of statutory interpretation." (*HNHPC, supra*, 94 Cal.App.5th at p. 70.) " 'We examine the "language, function and apparent purpose" ' of the statute. ... 'Even if mandatory language appears in [a] statute creating a duty, the duty is discretionary if the [public entity] must exercise significant discretion to perform the duty.' [Citations.] Thus, in addition to examining the statutory language, we must examine the entire statutory scheme to determine whether" the government actor has discretion in its performance of a mandatory duty. (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 701.) "This question [of

19

statutory interpretation] is generally subject to de novo review on appeal ..., a question of law for the court." (*Carrancho, supra*, 111 Cal.App.4th at p. 1266.)

C

*Preliminary Injunction*

"In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors:  (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction.  [Citations.]  The scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits." (*Common Cause, supra*, 49 Cal.3d at pp. 441–442.)

" 'The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court.'  (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.)  'A trial court will be found to have abused its discretion only when it has " 'exceeded the bounds of reason or contravened the uncontradicted evidence.' " ' (*Ibid.*)  'Further, the burden rests with the party challenging the [trial court's ruling on the application for an] injunction to make a clear showing of an abuse of discretion.' " (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 624.)

II

*Analysis*

A

*The Decision to Advance Both Proposals and Award the EMS Contract to ConFire Was Quasi-Legislative and Discretionary, Not Ministerial*

The first step in our analysis is to determine whether the County "had a ministerial duty capable of direct enforcement or a quasi-legislative duty

20

entitled to a considerable degree of deference." (*Carrancho, supra*, 111 Cal.App.4th at p. 1266.) As noted, this is a question of statutory interpretation that we review de novo. The trial court concluded the County's decision was ministerial. We agree with the County and ConFire that this determination was error.

The EMS Act grants broad authority to local medical emergency service agencies to create and implement their EMS plan, including using a competitive process to select EMS providers. The law recognizes that local agencies, like ICEMA, are best situated to know the service needs of the areas they are in, explicitly granting them authority to "develop an emergency medical services program" (§ 1797.200), which includes "(1) planning, implementing, and evaluating an emergency medical services system 'consisting of an organized pattern of readiness and response services based on public and private agreements and operational procedures' (§ 1797.204); (2) developing a formal plan for the system in accordance with the Authority's guidelines and submitting the plan to the Authority on an annual basis (§§ 1797.250, 1797.254); [and] (3) 'consistent with such plan, coordinat[ing] and otherwise facilitat[ing] arrangements necessary to develop the emergency medical services system' (§ 1797.252)." (*San Bernardino, supra*, 15 Cal.4th at p. 916.)

Within the broader authority granted to the local agency to develop its EMS plan, section 1797.224 of the EMS Act grants the local agency the discretionary authority to create EOAs "if a competitive process is utilized to select the provider or providers of the services pursuant to the plan." " '[T]he Legislature recognized [that] creating an EOA is an important administrative tool for designing an EMS system, for it allows these agencies to plan and implement EMS systems that will meet the needs of their constituencies and

21

at the same time ensure that the EMS providers with which they contract have a territory sufficiently populated to make the provision of these services economically viable.' " (*Valley Medical Transport, Inc. v. Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 759.)

Thus, under section 1797.224, the local agency is entirely responsible for developing the competitive process it will use to select an EMS provider. The statute gives no specific directives concerning how the process should occur, other than requiring it to be submitted as part of the agency's EMS plan, which then must receive approval from the Authority, and mandating that the process occur at unspecified "periodic intervals." (§ 1797.224.) There is no dispute among the parties that the County developed its competitive process, in the form of the RFP, in accordance with section 1797.224. The parties also agree that the RFP was submitted to the Authority for its approval and there is no indication in the record that such approval was withheld.[6]

The trial court found that the RFP "contained clear and unambiguous language describing a proposal's minimum qualifications, how [the County] would evaluate and score it, and the negotiations and approval procedure [the County] would follow for the highest scoring bid." Further, the court found that "[t]he scoring and evaluation aspect of the RFP mandated a single action after scoring competing proposals and prioritizing the proposal with the highest score. It compelled [the County] to forward that proposal to the

---

[6]   The record also does not affirmatively show the Authority approved the plan, but no party has provided any basis to dispute this presumed fact. The only citation in the parties' briefing to the approval is AMR's Verified First Amended Complaint and Petition for Writ of Mandate, which states "the County and its designated LEMSA—ICEMA—received approval from the State Authority on November 29, 2022 for the RFP."

22

Board for further negotiations precedent to ultimate approval." According to the trial court, "[f]orwarding the highest scoring proposal, therefore, constituted an entirely ministerial act to be performed 'in a prescribed manner in obedience to the mandate' of the RFP, and 'without regard' to subjective judgments or opinions to the propriety of this act." (Quoting *County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653.)

The trial court's analysis is wrong in two ways. The court concluded that by the Authority's approval of the RFP, it imposed a ministerial duty on the County to strictly comply with the RFP. Further, the court inserts requirements into the RFP, which it interprets as ministerial duties, that are not present in that document.

As to the first error, the EMS Act grants discretionary authority to the LEMSA to institute a competitive process. The law shields the LEMSA from antitrust liability and sets forth a broad policy goal—to select EMS providers who will comply with the act's base requirements for such service. However, "the details critical to [that] undertaking are committed to agency judgment." (*Carrancho, supra*, 111 Cal.App.4th at p. 1268.) As the County and ConFire point out, the EMS Act contains no direction for how a competitive process should be conducted. Rather, section 1797.224 is clear that the creation of the process is left to the local agency. Accordingly, and contrary to the trial court's conclusion, there is no ministerial duty imposed by the Act with respect to how the local agency selects its EOA providers. The competitive process is developed at the discretion of the local governmental agency and is

23

thus a quasi-legislative action.[7] (See *Carrancho,* at p. 1266 [" 'Discretion ... is the power conferred on public functionaries to act officially according to the dictates of their own judgment.' "]; *Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303 (*Mike Moore's*) ["The letting of contracts by a governmental entity necessarily requires an exercise of discretion guided by considerations of the public welfare."]; *Weinstein, supra,*

---

[7] The trial court also stated in its order that a purpose of obtaining the Authority's approval is "to fortify section 1767.6's statutory [antitrust] immunity through rigid compliance with the approved bidding process." The court then reasoned that to maintain antitrust immunity, the RFP "mandated a single action after scoring competing proposals ... to forward that proposal to the Board for further negotiations precedent to ultimate approval," which it found constituted a ministerial act. This conclusion is also wrong and was rejected by the Ninth Circuit in its decision affirming the dismissal of AMR's antitrust claim. The Ninth Circuit held that even if the County "awarded the contract 'in complete disregard of the State-mandated competitive process' as AMR alleges, the County Defendants are still entitled to *Parker* immunity." (*American Medical Response of Inland Empire v. County of San Bernardino* (9th Cir., Apr. 30, 2025, No 24-3195) 2025 U.S. App. Lexis 10389 (*American Medical Response*).) The Ninth Circuit cited *Omni Outdoor, supra*, 499 U.S. at p. 371, which held "that a local government was entitled to *Parker* immunity even when the nature of its regulation was allegedly substantively or procedurally defective." (*Ibid.*) We agree with ConFire that to the extent the trial court construed sections 1797.6 and 1797.224 to impose ministerial duties to conform to its misinterpretation of federal antitrust law, that construction was error.

Of note, the Ninth Circuit also concluded that the County had not disregarded the competitive process set forth in the RFP. The court stated, "even if AMR had the 'highest score,' the plain language of the state-approved RFP gave the County Defendants discretion to award the monopoly to the provider whose proposal presented 'the greatest value' to the County. Moreover, the County Defendants articulated how ConFire presented the 'greatest value' to the County, namely, by being eligible for supplemental state funding, by improving public safety through closer integration or coordination of services, and by promising faster response times than AMR." (*American Medical Response, supra*, 2025 U.S. App. Lexis 10389.)

237 Cal.App.4th at p. 964 [" 'A public entity's "award of a contract, and all of the acts leading up to the award, are legislative in character." ' "]; *Common Cause, supra*, 49 Cal.3d at p. 444 [statement of legislative intent does not give rise to ministerial duty].)

With respect to the requirements created by the RFP, the trial court concluded the document created a ministerial duty to only advance the "highest scoring" proposal for negotiations and approval by the Board. The court looked to subsections 2.12 part B and 2.13 to reach this conclusion, and it defined the highest score as the proposal with the greatest combined points awarded by each of the four scorers. The court also rejected the County's own interpretation of the RFP to include its decision to advance both proposals. Further, because the trial court concluded the RFP created a ministerial duty to advance only the highest scoring proposal under its definition of that term, the court refused to consider the County's broader procurement policies outside the RFP.

In concluding the RFP imposed a ministerial duty on the County, the trial court reads the RFP too narrowly. As the County points out, the document creates flexibility by making clear in the RFP's introduction, at subsection 1.3 part A, that the County intends to award the initial five-year contract to "the highest scoring Proposer whose proposal conforms to the RFP *and whose proposal presents the greatest value* to the residents and visitors in the San Bernardino County Comprehensive Service Area." (Italics added.) The same provision also states the "County realizes that criteria other than price is important and will award a contract based on the highest scoring proposal that demonstrates the best value *and meets the needs of the County*." (Italics added.) In the subsequent section of the RFP, instructions for proposers, the very first sentence contained in subsection 2.1., states, "The

25

County intends to award a contract to the respondent *whose proposal meets all of the Request for Proposals (RFP) criteria and receives the highest score* from the scoring sheet as evaluated by the Proposal Review Committee (Committee) *and best meets the needs of the County*." (Italics added.) That same subsection, 2.1, also provides that the "County reserves the right to reject any or all Proposals if it is in the best interest of the County to do so" and that the "County also reserves the right to terminate the RFP process at any time." Further, subsection 2.13 itself states, "The County may require the potential *Proposer(s)* selected to participate in negotiations." (Italics added.)

In short, the RFP's plain language provides that the County may negotiate with more than one proposer and that the final determination is left to the discretion of the Board based on the scoring, and the Board's determination of the proposer's ability to meet the needs of the County and provide the best value. Contrary to the trial court's finding, the RFP does not impose a ministerial duty on the County to negotiate solely with the proposer who received the highest total score. Indeed, subsection 2.13, titled "Negotiations and Notice of Intent to Award," explicitly contemplates more than one provider by the use of the term "Proposer(s)."

Further, like the Ninth Circuit, we agree with appellants that the County itself had the discretion under the RFP process to determine what constituted the "highest score." The RFP contains no definition of "highest score," and "[w]hile AMR received the highest *total* score, ConFire received the highest *median* score." (*American Medical Response, supra,* 2025 U.S. App. Lexis 10389.) In short, the RFP does not impose a ministerial duty on the County. When the document is taken as a whole, and subsections 2.13 and 2.14 are put in its broader context, this conclusion is clear. The RFP

26

gives the County discretion in its process and ultimately in its selection of the provider that is awarded the contract. Accordingly, the trial court's conclusion that the County had a ministerial duty to advance only AMR's proposal to the Board was error.

B

*AMR Cannot Show a Likelihood of Prevailing on Its Claim That the County Abused Its Discretion by Awarding the EMS Contract to ConFire*

Having concluded that neither the EMS Act nor the RFP imposes a ministerial duty, we now must consider the likelihood of AMR proving the County abused its discretion by awarding the contract to ConFire. "In reviewing ... quasi-legislative decisions, the trial court does not inquire whether, if it had power to act in the first instance, it would have taken the action taken by the administrative agency. The authority of the court is limited to determining whether the decision of the agency was arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair." (*Carrancho, supra*, 111 Cal.App.4th at p. 1265.)

"[I]f reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld." (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 182.) "Courts exercise limited review 'out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority.' [Citations.] The court does not 'weigh the evidence adduced before the administrative agency or substitute its judgment for that of the agency, for to do so would frustrate legislative mandate.'" (*Carrancho, supra*, 111 Cal.App.4th at p. 1265.)

Under this highly deferential standard, we cannot conclude that AMR is likely to prevail on its claim that the County abused its discretion by

27

awarding the contract to ConFire. The trial court found that AMR was "equally likely to prevail under the abuse of discretion standard" because the Notice of Intent to Award letter issued to AMR on October 27, 2023, "created ex nihilo a new procurement procedure that bore not even a passing resemblance to the procedure established by the RFP." The trial court then substituted its own judgment for that of the County. Without any basis, the court asserted that it appeared the County "desire[d] a specific outcome for the RFP" and "embrace[d] a desire for performative acts in public contracting in arguing against AMR's likely success on the merits." AMR repeats these unfounded accusations in its briefing before this court but provides no citation to the record in support.

Although it is not this court's role to search the record for citations, we see no indication in the record to suggest such wrongdoing. Rather, the record before this court shows the County was transparent in its decisions and did not stray outside the process set forth in the RFP. As discussed, the RFP did not preclude the County from advancing both proposals to the Board for consideration and negotiation. While the RFP stated the highest scoring proposer would be recommended to the Board, the RFP did not define the term "highest scorer" and three of the four evaluators on the Proposal Review Committee scored ConFire higher than AMR.

Under the discretion granted to the local agency by the EMS Act and in light of the vagueness in the RFP's definition of highest score, we cannot hold the County's action was "arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair." (*Carrancho, supra*, 111 Cal.App.4th at p. 1265.) Rather, after the scoring, the County reasonably found that no clear winner emerged from the RFP process. The County's decision to advance both proposers to negotiate with the Board was

28

consistent with the RFP, which stated in subsection 2.13 that more than one proposer could advance, and with the County's procurement manual, which contains additional guidelines for contract procurement and states the county may issue invitations to negotiate "with a short list of proposers to obtain best value during a RFP process."[8]

After advancing both proposals, the Board heard detailed presentations from AMR and ConFire at a public hearing, followed by many public comments in support of both proposals, before selecting ConFire. AMR has not shown that this decision was irrational or disconnected from the overarching goals of the RFP process to improve service delivery to customers and partners, to establish a more efficient EMS system, and to make investments back into the system. Rather, before the Board selected ConFire, each supervisor outlined the reasons he or she believed ConFire provided the best value, including that: (1) ConFire was eligible for supplemental state funding that could support the system and lower the County's costs; (2) ConFire would improve public safety by closer "integration

---

[8] As discussed in footnote 7, the Ninth Circuit reached the same conclusion in its decision affirming the dismissal of AMR's antitrust claims. In their reply briefs, the County and ConFire assert the Ninth Circuit's decision is entitled to preclusive effect. Although we granted AMR's request to file a supplemental brief addressing this issue and the County's and ConFire's requests to file responses thereto (and agree with the Ninth Circuit that the RFP did not impose a requirement to advance only AMR to further negotiations) we decline to reach the issue of collateral estoppel because it is unnecessary to our decision. Rather, we decide this case on its own merits. We also note the Ninth Circuit's recognition that "the state court may be a more appropriate forum to litigate AMR's challenges to the County['s] execution and administration of the RFP." (*American Medical Response of Inland Empire, supra*, 2025 U.S. App. Lexis 10389.)

Because we do not reach the issue of collateral estoppel, we deny ConFire's requests for judicial notice, filed on July 7 and August 26, 2025, and the County's request for judicial notice, filed on July 7, 2025, as moot.

or coordination of services," particularly during disasters, by consolidating EMS and fire response; (3) ConFire promised better service with faster response times, and (4) representatives from cities, towns, and fire agencies affected by the decision preferred ConFire.

By ruling that AMR was likely to prevail on its claim because the County abused its discretion, the trial court improperly "substitute[d] its judgment for that of the agency." (*Mike Moore's, supra,* 45 Cal.App.4th at p. 1303.) As ConFire asserts, the trial court afforded the County "no deference, failed to honor the presumptions in their favor, unjustifiably questioned their understanding of their own solicitation, substituted its judgment for that of [the County], questioned the wisdom of their actions, and accused [the County] of improper motivations without any direct evidence." This was reversible error.

C

*The Balance of Harms Does Not Support Imposition*
*of the Preliminary Injunction*

Lastly, because the court improperly concluded AMR was likely to prevail, its balance of harms analysis also cannot stand. " 'A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.' " (*Anderson v. County of Santa Barbara* (2023) 94 Cal.App.5th 554, 570.) " ' "Where there is ... no likelihood that the plaintiff will prevail, an injunction favoring the plaintiff serves no valid purpose and can only *cause* needless harm." ' " (*Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 91.)

Further, "[i]n general, if the plaintiff may be fully compensated by the payment of damages in the event he prevails, then preliminary injunctive relief should be denied. [Citation.] Where, as here, the defendants are public

30

agencies and the plaintiff seeks to restrain them in the performance of their duties, public policy considerations also come into play. There is a general rule against enjoining public officers or agencies from performing their duties. [Citations.] This rule would not preclude a court from enjoining unconstitutional or void acts, but to support a request for such relief the plaintiff must make a significant showing of irreparable injury." (*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1471.) Given our conclusion that AMR cannot show a likelihood of prevailing on the merits of its mandate claim and the general rule against enjoining public agencies, AMR has not shown that its risk of injury supports the imposition of a preliminary injunction.

## DISPOSITION

The order is reversed. On remand, the trial court is directed to enter an order denying AMR's motion for a preliminary injunction and to reconsider the amount of the undertaking it imposed on AMR in light of this court's decision. Costs of appeal are awarded to appellants County of San Bernardino, County of San Bernardino Board of Supervisors, Inland Counties Emergency Medical Agency, and Consolidated Fire Agencies.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

RUBIN, J.

31

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, | D085716 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVSB2416492) |
| COUNTY OF SAN BERNARDINO et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants, | |
| CONSOLIDATED FIRE AGENCIES, | |
| Real Party in Interest and Appellant. | |

THE COURT:

The opinion in this case filed December 18, 2025 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.


                                                                    MCCONNELL, P.J.

Copies to:  All parties